The STATE OF TEXAS,
Plaintiff-Appellant,

v.

ALLAN CONSTRUCTION COMPANY,
INC., et al., Defendants–Appellees.

No. 87–1766.

United States Court of Appeals,
Fifth Circuit.

Aug. 17, 1988.

Allene D. Evans, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for plaintiff-appellant.

Paul J. Van Osselaer, Geoffrey Amsel, Judith Northcutt Osborne, Shapiro, Edens & Cook, Austin, Tex., for defendants-appellees.

Before BROWN, KING, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this antitrust action, the State of Texas alleges that the defendants participated in a scheme to rig the bidding on state highway construction projects. The district court granted summary judgment for defendants, finding that the action was barred by the statute of limitations. The court rejected the State's contention that the statute was tolled by fraudulent concealment, finding that the State's only evidence of concealment, certain acts undertaken at the time of the conspiracy and in its furtherance, could not be considered acts of concealment. Unpersuaded that the doctrine of fraudulent concealment is so limited, we reverse.

I

In October 1980, a federal grand jury in Austin, Texas, began to investigate allegations that construction companies had conspired for several years to fix the bid price for highway construction contracts. According to federal prosecutors, the companies involved in the scheme made secret agreements to inflate their bids and to restrict the number of bidders on each project. As part of the conspiracy, the companies falsely swore in affidavits submitted with each bid that they had taken no action "in restraint of free competitive bidding." The grand jury issued its first indictments in November 1981, naming twelve contracting firms and ten individuals as conspirators.

Although the criminal prosecution proceeded under federal antitrust and mail fraud statutes, State officials participated in the investigation from its inception. The grand jury heard testimony from officials in the State Highway Department, including Ted Ziller, an engineer responsible for supervising the bidding process. Ziller, along with engineer Bobbie Templeton, also assisted federal prosecutors in gathering information before the grand jury convened, meeting with government attorneys as early as August 1980. At the request of the United States, the Highway Department also provided records pertaining to the State's dealings with particular companies. However, the State Highway Department made no record of which companies were under investigation.

The grand jury proceedings were widely publicized in Texas. In particular, an article printed in the October 7, 1980, edition of the *San Antonio Express News* specifically noted that Allan Construction Company, along with approximately twenty other firms, had been subpoenaed to produce documents related to bidding activities. This article, like many others concerning the investigation, was circulated throughout the Highway Department.

The Texas Attorney General's office also was aware of the investigation even before the grand jury first met. In the summer of 1980, Assistant State Attorney General Katherine Bond spoke with federal prosecutors about the inquiry. Sometime in 1980 or early 1981, the Attorney General's office retained an economist to use bid statistics to identify which firms were involved in bid-rigging. This effort was unsuccessful, as were the State's requests that federal investigators disclose the identity of suspected contractors.

The grand jury never indicted Allan Construction Company or any of its employees. On April 6, 1982, however, the grand jury returned an indictment against Price Construction Company. Shortly thereafter, an

attorney for one of Price's employees provided the State Attorney General's office with a list of those contractors the employee might identify as part of the conspiracy. Allan Construction Company was on that list.

The State had further evidence of Allan's possible involvement in May 1982, when Travis Jenkins, an employee of C.H. Allison Company, signed a sworn statement for the Attorney General's office. In the statement Jenkins said that an Allan employee had agreed on at least one occasion to refrain from bidding on a project as part of the ongoing scheme.

On November 5, 1985, the State filed suit in federal district court against Allan Construction Company and William Allan, Jr., its president during the alleged conspiracy. The complaint alleged that the defendants had violated federal antitrust laws by participating in a conspiracy to rig construction bids. The district court granted summary judgment for defendants on the basis of the statute of limitations. In doing so, the court rejected the State's contention that the statute of limitations had been tolled by the defendants' fraudulent concealment of illegal activity. According to the district court, the State failed to show "affirmative acts of concealment" other than those acts—such as the submission of false affidavits—done "in furtherance of the conspiracy." The court also concluded that the State failed to show that it had diligently pursued its claims against Allan. In particular, the court found that in light of the Highway Department's involvement in the federal investigation and the *Express News* article naming Allan as a potential suspect, no reasonable jury could conclude that the State did not have adequate inquiry notice of its claim as early as 1980.

## II

The parties agree that in the absence of fraudulent concealment, the State's suit is time-barred. An antitrust action must be brought within four years from the date on which it accrues.[1] In a conspiracy action, that period begins with an overt act done pursuant to the conspiracy.[2] The last contract bid in which the State alleges wrongdoing was let on February 13, 1980, but the suit was not filed until November 5, 1985. In order to avoid the statute, then, the State must demonstrate that fraudulent concealment tolled the running of the limitations period until November 5, 1981, at the earliest.

As the district court correctly recognized, a plaintiff may invoke the fraudulent concealment doctrine only by proving two elements: first, "that the defendants concealed the conduct complained of, and second, that [the plaintiff] failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim."[3] The district court concluded that the State established neither element in this case. We deal with each element in turn.

### A. *Acts of Concealment*

To prove the first element—that Allan "concealed the conduct complained of"— the State offered evidence that Allan conducted covert meetings, submitted affidavits that falsely denied any collusion, and submitted intentionally high complementary bids to make other inflated bids appear legitimate. If these acts do not suffice to toll the statute, the State argues, then the bid-rigging conspiracy was "inherently self-concealing," thus eliminating the requirement of specific acts of concealment. Because these aspects of the fraudulent concealment doctrine have occasioned confusion in federal courts, we review the cases in some detail.

1. *Self–Concealing Conspiracy.* As most courts have stated the test, the statute of limitations is tolled only if the defendant has engaged in "affirmative acts"

---

1. See Clayton Act § 4B, 15 U.S.C. § 15b.

2. See *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971).

3. *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1169 (5th Cir.1979), *cert. denied*, 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980).

of concealment.[4] As we have stated, "Concealment by defendant only by silence is not enough. [The defendant] must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry."[5]

However, several courts also have stated that if the underlying wrong is "self-concealing," the plaintiff need not show affirmative acts. For example, in a fraud case, *Bailey v. Glover*,[6] the Supreme Court wrote that

> when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, *or is of such character as to conceal itself,* the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing....[7]

This is consistent with the general rule that in a fraud case, the plaintiff need only aver the underlying fraud in order to toll the statute of limitations until such time as the plaintiff had some notice of the wrong; fraud is, by its very nature, self-concealing.[8] We recognized the distinction in *Prather v. Neva Paperbacks, Inc.*,[9] a case in which the plaintiff sought to apply the fraudulent concealment doctrine to a copyright infringement action. We stated that "[the fraudulent concealment] doctrine, which is applicable to any cause of action, should not be confused with the doctrine applicable where the gist of the action itself is fraud, and the concealment is inherent in the fraud."[10]

Other circuits have held that the "self-concealment" notion may extend to wrongs that are not based in fraud, but which contain an element of deception. In *Hobson v. Wilson*,[11] the plaintiffs alleged that FBI agents had infringed on their first amendment rights by disseminating false information about the plaintiffs' political affiliations. The D.C. Circuit held that a wrong is "self-concealing" for the purpose of fraudulent concealment if "the deception, misrepresentation, trick or contrivance is a necessary step in carrying out the illegal act" rather than "separate from the illegal act and intended only to cover up the act."[12] Because secrecy and deception were essential to the disinformation scheme alleged in *Hobson,* the court found that summary judgment for defendants on the statute of limitations issue was inappropriate.

A few examples illustrate the D.C. Circuit's "self-concealment" analysis. To steal an antique vase is not a self-concealing wrong; the true owner knows the vase is stolen even if the owner does not know the identity of the thief. On the other hand, to sell a fake vase as if it were an antique is not only fraud, it is a self-concealing wrong. Deception is an essential element of the wrong, and one that is not intended merely to cover up the wrong itself. By contrast, to steal a vase and to replace it with a worthless replica is not

---

4. See *Hennegan v. Pacifico Creative Service, Inc.*, 787 F.2d 1299, 1302 (9th Cir.) (plaintiff must show that defendant "engaged in affirmative conduct that fraudulently concealed the existence of a cause of action"), *cert. denied*, 479 U.S. 886, 107 S.Ct. 279, 93 L.Ed.2d 254 (1986); *Berkson v. Del Monte Corp.*, 743 F.2d 53 (1st Cir. 1984) (same), *cert. denied*, 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985).

5. *Crummer Co. v. Du Pont,* 255 F.2d 425, 432 (5th Cir.) (quoting *Arkansas Natural Gas Co. v. Sartor,* 78 F.2d 924, 929 (5th Cir.1935)), *cert. denied,* 358 U.S. 884, 79 S.Ct. 119, 3 L.Ed.2d 113 (1958); *see also Wood v. Carpenter,* 101 U.S. (11 Otto) 135, 143, 25 L.Ed. 807 (1879) (same).

6. 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875).

7. *Id.* at 349–50 (emphasis added).

8. *See, e.g., Bufalino v. Michigan Bell Telephone Co.,* 404 F.2d 1023, 1028 (6th Cir.1968) ("The original fraud is regarded as a continuing affirmative act, and mere silence of the defendant is treated as concealment."), *cert. denied,* 394 U.S. 987, 89 S.Ct. 1468, 22 L.Ed.2d 763 (1969); *see also Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (noting that where plaintiff has been diligent in pursuing fraud claim, statute is tolled even though there have been no acts of concealment).

9. 446 F.2d 338 (5th Cir.1971).

10. *Id.* at 341 n. 2 (citing *Holmberg* ).

11. 737 F.2d 1 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

12. *Id.* at 33 n. 102.

self-concealing. The wrong is theft of the vase; the replacement is an act separate from the wrong itself and aimed only at concealing the fact that the real vase has been stolen.

Having the benefit of *Hobson*'s analysis, two other circuit courts have considered whether a bid-rigging conspiracy may be "self-concealing" where the plaintiffs' claim is based on the antitrust laws. In an opinion later vacated by the en banc court, *Colorado v. Western Paving Construction Co.*,[13] a panel of the Tenth Circuit dealt with allegations of bid-rigging conspiracy quite similar to those in this case. The panel first rejected the argument that submission of false affidavits or other denials of wrongdoing could constitute "affirmative acts" of concealment.[14] The court also excluded from consideration deceptive acts committed in furtherance of the conspiracy itself, such as the submission of complementary bids to make the inflated "low" bid appear competitive. In the panel's words, "Acts that are part of the original wrong, while they may conceal the wrong, are not acts of concealment; they are acts of perpetration." [15]

Nevertheless, the *Western Paving* panel held that the bid-rigging conspiracy could be "self-concealing," thus eliminating the need for plaintiff to demonstrate affirmative acts of concealment:

> If a bidrigging conspiracy exists, it must remain concealed to be successful. Any knowledge of the conspiracy would lead plaintiff to seek action immediately and result in collapse of the conspiracy. Furthermore, unlike many conspiracies, a

bidrigging conspiracy is likely to exist for an extended period of time. To be attractive to all bidders, the conspiracy must cover more than one job—or must provide some quid pro quo to the "losing" bidders. The very nature of a bid-rigging conspiracy makes it likely that future bids will also be rigged..... These additional bidrigging activities not only provide the compensation for one of the "losing" bidders in the original bid but also help to conceal the bidrigging activity on the other bids. Such subsequent fraudulent acts may in themselves amount to affirmative acts of concealment. In any event they show that a bidrigging conspiracy, if it exists at all, is *per se* self-concealing.[16]

The Second Circuit adopted this reasoning in another bid-rigging case, *New York v. Hendrickson Brothers, Inc.*[17] Relying on *Hobson*, the court also noted that the submission of a rigged bid was similar to the sale of a fake antique vase: the bid purports to be something it is not, a price that is the result of competition rather than collusion.[18] For these reasons, the court concluded that "proof of the conspiracy itself sufficed to prove concealment by the coconspirators." [19]

▇▇▇▇ Although we accept the D.C. Circuit's definition of a "self-concealing" wrong—that is, one in which deception is an essential element for some purpose other than merely to cover up the act—we do not agree with the Second Circuit that antitrust violations arising from a bid-rigging conspiracy are always self-concealing.[20] It

13. 833 F.2d 867 (10th Cir.1987), *panel opinion vacated and district court decision aff'd by an equally divided court*, 841 F.2d 1025 (1988) (en banc).

14. *See Western Paving*, 833 F.2d at 876 (quoting *King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1155 (10th Cir.1981) (mere denial of wrongdoing cannot be an act of concealment), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982)).

15. *Western Paving*, 833 F.2d at 877.

16. *Id.* at 881 (citation omitted).

17. 840 F.2d 1065, 1084 (2d Cir.1988).

18. *Id.* at 1083.

19. *Id.* at 1084.

20. We are careful to note, however, that the consequences of classifying a wrong as "self-concealing" will be different in this circuit than in the D.C. Circuit. In *Hobson*, the D.C. Circuit held that when a wrong is self-concealing, the burden shifts to the defendant to demonstrate plaintiff's lack of diligence. *See Hobson*, 737 F.2d at 35. It is settled in our circuit, on the other hand, that even where the plaintiff has shown affirmative acts of concealment, the plaintiff bears the burden of showing his diligence. *See Beef Industry*, 600 F.2d at 1169

is true of any price-fixing conspiracy that "it must remain concealed to be successful."[21] Because price-fixing is illegal, public knowledge of the activity usually ends the agreement. This deceptive aspect of the conspiracy is, in the words of *Hobson*, intended solely to "cover up" the illegal act. Nor is bid-rigging unique because it must "exist for an extended period of time."[22] Every cartel seeks to reap monopoly profits for as long as possible, and because a cartel must limit output, its members have to distribute fewer sales among themselves. We cannot see how this aspect of a bid-rigging conspiracy makes it more deceptive than any other price-fixing conspiracy.

We also are unpersuaded by the Second Circuit's additional argument that bid-rigging is self-concealing because a rigged bid purports to be competitive when in fact it is collusive. Any price charged for a product or service, whether in the form of a bid or otherwise, purports to be competitive at least insofar as it purports to be lawful. In short, we cannot conclude that Congress, in writing the Clayton Act's four-year statute of limitations, could have intended for the fraudulent concealment doctrine to apply to every price-fixing case. Hence, we reject the State's contention that because the bid-rigging conspiracy was inherently self-concealing, it need not prove affirmative acts of concealment.

2. *Affirmative Acts.* The State argues that even if the conspiracy was not "self-concealing," there were sufficient affirmative acts of concealment to toll the statute. According to the State, these included the submission of false affidavits, efforts to protect the secrecy of bidding negotiations, and submission of intentionally high bids to legitimate lower but collusive bids. The district court rejected the argument, finding that "these acts are the acts which were allegedly done in furtherance of the conspiracy, but do not constitute affirmative acts of concealment." This point of view is in accord with the Tenth Circuit panel's conclusion in *Western Paving,* that "acts of perpetration" cannot be counted as "acts of concealment."[23]

In this circuit, however, we never have held that the acts that demonstrate fraudulent concealment must be wholly separate from the acts underlying the wrong itself. Indeed, in *Greenhaw v. Lubbock County Beverage Ass'n,*[24] we upheld a jury finding of fraudulent concealment where the acts of concealment were intertwined with the acts of price fixing. We wrote:

> The retailers argue that no evidence indicated concealment. We are unpersuaded. There was evidence of secret agreements and covert price-setting sessions. The concealment comports with common

("[A]n antitrust plaintiff must shown that ... he failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim."), 1171 ("The plaintiffs bear the ultimate burden of persuasion on the fraudulent concealment issue."). Hence, to classify a wrong as self-concealing relieves the plaintiff only of the burden of demonstrating affirmative acts; it does not lessen the plaintiff's burden of proving reasonable diligence.

Curiously, it is also not clear that the D.C. Circuit would agree that plaintiff need not prove affirmative acts where the wrong is "self-concealing." Although in *Hobson* the D.C. Circuit classified the wrong as "self-concealing," the court did not seem to conclude that affirmative acts of concealment were irrelevant. Indeed, in deciding that the wrong was self-concealing, the court mentioned the "affirmative efforts" of concealment that justified tolling the statute, such as destruction of incriminating documents and false authorship of publications. *See Hobson,* 737 F.2d at 36–37. The D.C. Circuit thus may consider the "self-concealment" label im-

portant only insofar as it affects the plaintiff's burden of proof on the issue of diligence; in other words, it may be that in the D.C. Circuit's view, even self-concealing conspiracies must contain affirmative acts of concealment. As our discussion in text indicates, we do not share this view.

21. *Western Paving,* 833 F.2d at 881.

22. *Id.*

23. *Western Paving,* 833 F.2d at 877; *see also Pennsylvania v. Lake Asphalt & Petroleum Co.,* 610 F.Supp. 885, 888 (M.D.Penn.1985) ("[F]raudulent concealment consists of affirmative acts independent of the underlying conspiracy.").

24. 721 F.2d 1019 (5th Cir.1983). A later panel disapproved of *Greenhaw* as to an aspect other than its fraudulent-concealment analysis in *International Woodworkers v. Champion International,* 790 F.2d 1174, 1181 (5th Cir.1986).

sense. Such activities are normally concealed, especially in light of the criminal and civil penalties that may result if they are discovered.[25]

Hence, while we did not conclude that the conspiracy in *Greenhaw* was "self-concealing," we held that evidence of efforts aimed at keeping the price-fixing activities secret, even if undertaken at the time of the conspiracy, could count as proof of fraudulent concealment.[26]

■ Refusing to allow affirmative acts that further a conspiracy to support a finding of fraudulent concealment rests upon a view of the equitable doctrine of tolling that we find unacceptable. This view may be stated simply: Congress outlawed a conspiracy in restraint of trade and set a period of four years within which suits for injury from such a conspiracy must be brought. A conspiracy includes an agreement to achieve the illegal end and includes acts that further that agreement. Hence, acts that are part of the conspiracy cannot serve to "extend" the four year period because Congress requires that suits claiming injury for such a conspiracy be brought within that time; to consider acts in furtherance as acts of concealment alters the period of limitation intended by Congress.

Although the argument has some force, we find it unpersuasive for two reasons. First, this "tidy" view of distinct spheres for offense, limitations and equitable tolling misperceives the doctrine of equitable tolling. Through the statute of limitations Congress has chosen to confer on an accused wrongdoer the benefit of repose once the limitations period has passed. However, the equitable doctrine of fraudulent concealment recognizes that this benefit should not be available to a wrongdoer who takes undue advantage of the statute by attempting to conceal his conduct.[27] The

fact that such concealment occurs at the time of the wrong itself rather than afterwards does not make the wrongdoer any more deserving of the statute's protection.

Second, as "tidy" as the proposed approach may seem, we cannot imagine a principled way to determine what acts of concealment are "independent" from the underlying wrong. We are not persuaded that the distinction turns on whether the act of concealment "furthered" the wrong; every act of concealment furthers the success of the offense by stalling its detection. Likewise, to consider only those acts of concealment completed subsequent in time to the wrong would lead to indefensible results. For example, if Allan employees had shredded incriminating books and records the day before the last bid was let, this act would surely be pertinent to the fraudulent-concealment inquiry, but under the district court's approach we would be bound to ignore it. It is true that because almost every price-fixing conspiracy involves some efforts aimed at secrecy, our rejection of a requirement that "acts of concealment" be independent of the conspiracy may make it easier to prove fraudulent concealment in antitrust cases. Nevertheless, no other approach is better principled or more workable.

■ We also disagree with the district court's holding that on the summary judgment evidence before the court, Allan's submission of affidavits of denial could not, as a matter of law, constitute acts of concealment. It is true that, generally speaking, denial of wrongdoing is no more an act of concealment than is silence.[28] Nevertheless, many courts have recognized, and so now do we, that a denial may constitute concealment where the parties are in a fiduciary relationship, or where the circum-

---

**25.** *Id.* at 1030.

**26.** *Accord* 2 Areeda & Turner, *Antitrust Law* ¶ 325d, at 124 ("[T]he limitation period is tolled by secret conspiracies, such as most clear-cut price-fixing agreements, which are not only created and maintained outside of the public eye, but in which elaborate efforts are taken by the participants to disguise the activity.").

**27.** *See Bailey,* 88 U.S. at 349 (stating that to permit the defendant to conceal his wrong "until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure").

**28.** *See Crummer,* 255 F.2d at 432.

stances indicate that it was reasonable for the plaintiff to rely on defendant's denial.[29] While it is unlikely that the State's reliance on the affidavits could have been reasonable once the federal investigation began, the district court should at least consider the argument on remand.

## B. *Diligence*

■ Even where a defendant has concealed wrongful conduct, the statute of limitations is tolled only until such time as the plaintiff, exercising reasonable diligence, could have discovered the facts forming the basis for the claim.[30] Moreover, the plaintiff need not have actual knowledge of such facts; "[t]hose who have learned of facts 'calculated to excite inquiry' must inquire."[31] The district court here concluded that because the State knew in 1980 that Allan's records had been subpoenaed by federal prosecutors, the State is chargeable with knowledge that it had an antitrust claim against the company.

However, as we explained in *Beef Industry,* even though a plaintiff might have inquiry notice of a potential claim, it does not necessarily follow that reasonable diligence will discover sufficient facts to support legal action. In *Beef Industry,* for example, the district court held on summary judgment that plaintiffs were not entitled to tolling by fraudulent concealment because they had not been diligent in pursuing their claim. The court found that the plaintiffs had sufficient notice because a nearly identical antitrust claim against the same defendants had been filed several years earlier in California.[32]

Although we agreed with the district court that the plaintiffs could be charged with knowledge of the allegations in the California case, we did not agree that failure to file suit on the basis of such information necessarily established a lack of due diligence for the purpose of summary judgment.

Although the statute of limitations is not tolled simply because the plaintiffs lack much of the evidence supporting their potential claim, *Prather v. Neva Paperbacks, Inc.,* 5 Cir.1971, 446 F.2d 338, they cannot have notice of a potential claim unless they are aware of some evidence tending to support it. The filing by others of a similar lawsuit against the same defendants may in some circumstances suffice to give notice, but to rule that it does so *as a matter of law* is to compel a person situated like these plaintiffs to file suit, on the pain of forfeiting his rights, regardless of whether his attorney believes that there is "good ground to support it." Rule 11, F.R.Civ.P. The mere filing of a similar lawsuit, without more, does not necessarily give "good ground" because that suit might well be frivolous or baseless.[33]

We emphasized that while the plaintiffs ultimately would bear the burden of persuasion on the question of diligence, in the summary judgment context it was up to defendants "as the moving parties, to demonstrate conclusively that the plaintiffs, through the exercise of reasonable diligence, would have discovered adequate ground for filing suit."[34] To justify summary judgment, we concluded, defendants would have had to prove that the plaintiffs had access to information that would independently verify the allegations in the California complaint.[35]

■ The approach we adopted in *Beef Industry* has not been altered by the Su-

---

29. See *Berkson,* 743 F.2d at 56; *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir.1978); *King & King,* 657 F.2d at 1155.

30. See *Beef Industry,* 600 F.2d at 1170; *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975).

31. *Beef Industry,* 600 F.2d at 1171; *see also Prather,* 446 F.2d at 341.

32. See *Beef Industry,* 600 F.2d at 1169–70.

33. *Id.* at 1171 (emphasis retained; footnote omitted).

34. *Id.*

35. *See id.; see also Hobson,* 737 F.2d at 36 ("[S]imply because a person knows he has been injured by one person does not mean he should be held to know of every other participant.").

preme Court's recent refinement of the summary judgment standard, at least insofar as it applies in this case. In *Celotex Corp. v. Catrett*,[36] the Court held that summary judgment is appropriate against a party who has failed to demonstrate the existence of a genuine issue of material fact on an element of the case for which that party bears the burden of proof, even where the party moving for summary judgment has not offered evidence negating the opponent's claim.[37] Here, the State has introduced some evidence of its diligence: the State's attorneys have sworn that they made repeated attempts to obtain information from federal prosecutors in addition to attempting to identify bid-riggers by statistical means. Unless Allan's evidence had been so compelling that no reasonable jury could consider these attempts reasonably diligent, summary judgment was not appropriate even under the standard of *Celotex*.

Allan's evidence was not so strong. It is true that the Highway Department's failure to keep records of the companies about which federal prosecutors inquired indicates less than aggressive diligence about the State's claims. And, on the basis of news accounts, the State is deemed to have been aware in 1980 that Allan's records were subpoenaed by the grand jury.[38]

Nevertheless, these facts do not conclusively establish that greater diligence on the State's part would have led to evidence that the claim was "well grounded in fact."[39] Indeed, the summary judgment evidence indicated that the State had the first specific evidence supporting its claim in April 1982, when indicted individuals first named Allan as a conspirator. It will be for the jury to determine whether reasonable diligence could have revealed evidence specifically establishing Allan's culpability prior to November 5, 1981.

## III

In sum, we hold today that acts taken to conceal wrongful conduct may support a claim of fraudulent concealment even though they occur at the time of the offense and further commission of the offense. We also hold that bid-rigging is not inherently self-concealing; fraudulent concealment of a bid-rigging scheme must be proven by evidence of affirmative acts of concealment. Under this standard, the State has presented sufficient evidence to raise a fact issue on fraudulent concealment. The judgment of the district court is REVERSED.[40] In the event of trial on remand, the issue of fraudulent concealment will be for the jury.[41]

**36.** 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**37.** *Id.*, 106 S.Ct. at 2553–54; *see also James v. Nico Energy Corp.*, 838 F.2d 1365, 1372 (5th Cir.1988).

**38.** *Cf. Beef Industry*, 600 F.2d at 1170 (plaintiff chargeable with knowledge of matters in the public record); *United Klans of America v. McGovern*, 621 F.2d 152, 154 (5th Cir.1980) (plaintiffs chargeable with knowledge of local news articles).

**39.** *See* Fed.R.Civ.P. 11.

**40.** The state also contends on appeal that the district court erred in dismissing the state's plea for injunctive relief. On this point, the district court did not elaborate its reasons for decision, writing only that, "Plaintiff has failed to allege any continuing conspiracy or illegal conduct." Defendants had not urged the district court to dismiss the injunction request on this basis, so the state never had an opportunity to be heard on the point. Although the district court may well be correct that the state's pleadings are

inadequate in this regard, we must vacate the dismissal because plaintiff had no opportunity to convince the court otherwise. *See Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1364–65 (2d Cir.1985), *aff'd*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986); *Powell v. United States*, 849 F.2d 1576, 1579–1581 (5th Cir.1988); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

We also must vacate the district court's dismissal of the state's pendent claims under Texas law; the basis for dismissal was that once the federal claims dropped out, the court lacked subject matter jurisdiction to adjudicate the pendent claims.

**41.** Our holding can be translated to trial reality by use of the sample jury instructions prepared by the Antitrust Division of the American Bar Association, which we attach as an appendix to this opinion. To these instructions we would add, however, that denial of wrongdoing may constitute an affirmative act of concealment where the denial is made under circumstances indicating that it was reasonable for plaintiff to

APPENDIX:

Sample Jury Instructions in Civil Antitrust Cases

Task Force of the Section of Antitrust Law of the American Bar Association, 1987

Pp. G–2—G–5

"Certain Defenses and Exemptions"

Instruction 1

*Fraudulent Concealment*

Defendant has raised as a defense the statute of limitations. Statutes of limitations require that a person who believes himself to have been injured by the wrongful act of another must bring suit to recover damages caused by that injury within a certain period of time after that injury occurred.

In this case, plaintiff cannot recover for any injury which occurred prior to [*date X, four years before filing of the complaint*],[1] unless plaintiff brings itself within an exception that is called the doctrine of fraudulent concealment. Plaintiff is asking to recover for injury which it claims began as early as [*specify date*], a date earlier than [*date X*]. In order to establish that the fraudulent concealment doctrine applies and thus recover damages for any injuries that occurred prior to [*date X*], plaintiff must prove each of the following elements by a preponderance of the evidence:

First, that it did not know of [*describe alleged violation*] until on or after [*date X*] and that it could not have learned of the violation through the exercise of due diligence until after that date;[2] and

Second, that defendant actively concealed the alleged activities that caused plaintiff's injuries. It is not enough that defendant failed to disclose the alleged activities; plaintiff must also prove that defendant took affirmative steps to prevent plaintiff from learning of those activities.[3]

rely on the denial in failing to discover the wrongful conduct that caused plaintiff's injury. *See* our discussion *supra*, at pp. 1532–1533. (except where indicated, the accompanying footnotes are those of the Antitrust Division.)

1. The date to be inserted is four years prior to the filing of the complaint, as provided in Section 4B of the Clayton Act, 15 U.S.C. § 15b (1984).

2. *See, e.g., In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1169 (5th Cir.1979), *cert. denied,* 449 U.S. 905 [101 S.Ct. 280, 66 L.Ed.2d 137] (1980) (*"Beef Industry"*); *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 249–50 (9th Cir.1978); *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir. 1975) (*"Dayco"*); *Weinberger v. Retail Credit Co.,* 498 F.2d 552, 555 (4th Cir.1974).

This instruction will require some tailoring to address the specific allegations made in each case.

It has been held that public proceedings—such as congressional or administrative hearings, private lawsuits, or a criminal indictment—may cause the statute to begin to run. *Beef Industry,* 600 F.2d at 1170–71; *Dayco,* 523 F.2d at 394; *Willmar Poultry Co. v. Morton–Norwich Products, Inc.,* 520 F.2d 289, 295–96 (8th Cir. 1975), *cert. denied,* 424 U.S. 915 [96 S.Ct. 1116, 47 L.Ed.2d 320] (1976); *In re Shopping [Carts] Antitrust Litigation,* 1982–1 Trade Cas. (CCH) ¶ 64,612 at 73,348 (S.D.N.Y.1982). It is not nec-

essary that the plaintiff have knowledge, actual or constructive, of all the details of this cause of action. *Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated Ltd.,* 185 F.2d 196, 209 (9th Cir.1950), *cert. denied,* 341 U.S. 912 [71 S.Ct. 620, 95 L.Ed. 1349] (1951). Some courts have held that in conspiracy cases plaintiff's knowledge that he has been injured by apparently unilateral acts of one defendant is not enough to start the statute running. *King & King Enterprises v. Champlin Petroleum Co.,* 657 F.2d 1147, 1155–56 (10th Cir.1981), *cert. denied,* 454 U.S. 1164 [102 S.Ct. 1038, 71 L.Ed.2d 320] (1982) (*"King v. King"*); *In re Plywood Antitrust Litigation,* 76 F.R.D. 570, 586 (E.D.La.1976).

3. *See, e.g., Rutledge,* 576 F.2d at 250; *City of Kansas City v. Federal Pacific Electric Co.,* 310 F.2d 271, 278 (8th Cir.), *cert. denied,* 371 U.S. 912 [83 S.Ct. 256, 9 L.Ed.2d 171] (1962) *and* 373 U.S. 914 [83 S.Ct. 1297, 10 L.Ed.2d 415] (1963). Mere nondisclosure may be enough if there is a fiduciary duty or other affirmative obligation to make disclosure. *Glazer Steel Corp v. Toyomenka, Inc.,* 392 F.Supp. 500, 503 (S.D.N.Y.1974). Some courts have said that a conspiracy may be self-concealing so that little or nothing more than underlying conspiratorial acts are necessary. *See King & King,* 657 F.2d at 1156; *Baker v. F & F Investment,* 420 F.2d 1191, 1199 (7th Cir.), *cert. denied,* 400 U.S. 821 [91 S.Ct. 40, 41, 27 L.Ed.2d 49] (1970) (*"Baker"*); *Ingram Corp. v. J. Ray McDermott & Co.,* 1980–1 Trade Cas. (CCH) ¶ 63,277 at 78,414 (E.D.La.1980), *rev'd on other grounds,* 698 F.2d 1295 (5th Cir.1983) (*"J. Ray McDermott"*).

If you find that plaintiff has proven each of these elements, then you may find that the doctrine of fraudulent concealment applies to plaintiff's claim. In that event, the length of time for which plaintiff may recover damages may be expanded to include the earliest injury which you find was suffered by plaintiff.* If you find that plaintiff has failed to prove either of the elements, then you must find that the statute of limitations bars any claim by plaintiff relating to any injury that occurred prior to [*date X*].

---

Conduct that has been held sufficient to constitute acts of concealment includes holding secret meetings at hotels and private residences, destruction of notes of meetings, making of phone calls from pay phones, submission of bids falsely appearing to be regular, and false execution of noncollusion affidavits. *See, e.g., J. Ray McDermott*, 1980–1 Trade Cas. (CCH) at 78,413–15; *Ohio Valley Electric Corp. v. General Electric Co.*, 244 F.Supp. 914, 922 (S.D.N.Y.1965) ("*Ohio Valley Electric*"); *Illinois v. Sperry Rand Corp.*, 237 F.Supp. 520, 523–24 (N.D.Ill.1965). Most courts that have considered the question have held that denial of wrongdoing is not enough, but there are some indications to the contrary. *See* cases cited in American Bar Association, Section of Antitrust Law, *Antitrust Law Developments* 428 nn. 358, 359 (2d ed. 1984)

Again, the instruction in a particular case should be tailored to deal with the evidence presented.

* Note by the Court: This sentence may assume that once plaintiff shows that defendant fraudulently concealed any part of plaintiff's antitrust injury, plaintiff may recover for all injuries caused by the conspiracy, including those resulting from acts committed more than four years before the time at which reasonable diligence would have discovered evidence to support a claim. A strong argument can be made, however, that there can be no recovery for an injury suffered more than four years before the filing of the complaint or, if fraudulent concealment be proved, four years before the date by which the plaintiff, with reasonable diligence, should have discovered the injury. We express no opinion on the issue, as it is not before us. A district court might use Rule 49, Fed.R.Civ.P. to hedge this legal uncertainty by submitting separate interrogatories for each possible damage period. It follows that the parties should similarly construct their damage models.