**Margie F. CUNNINGHAM, Fred D. Cunningham, and Billy Floore, Individually and on Behalf of Others Similarly Situated, Plaintiffs,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**No. 4:95CV417–B–B.**

United States District Court, N.D. Mississippi, Greenville Division.

Aug. 29, 1997.

Joel D. Pegram, Oxford, MS, Richard T. Phillips, Smith, Phillips, Mitchell, Scott & Rutherford, Batesville, MS, Melvyn I. Weiss, Barry A. Weprin, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, Andrew S. Friedman, Bonnett Fairbourn Friedman & Balaint, PC, Phoenix, AZ, for plaintiffs.

John E. Hughes, Wells, Wells, Marble & Hurst, Jackson, MS, Vaughn C. Williams, Stanley A. Chinitz, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for defendant.

### MEMORANDUM OPINION

BIGGERS, District Judge.

This cause comes before the court upon the defendant's motion to dismiss, in part, plaintiffs' amended complaint. The court has duly considered the parties' memoranda and exhibits and is ready to rule.

### FACTS

On April 24, 1997, the plaintiffs amended their complaint to add Billy Floore as a

named plaintiff (hereinafter, since Floore is the only plaintiff at issue in this motion, the court will refer to Floore either by name or as "the plaintiff"). The defendant has filed a motion to dismiss all claims raised by Billy Floore on the grounds that the statute of limitations has expired.

According to the allegations of the amended complaint, the plaintiff, Billy Floore, purchased a life insurance policy in the face amount of $15,000.00 from the defendant Mass Mutual in 1958 (hereinafter referred to as "the 1958 policy"). In 1988, Floore received an unsolicited telephone call from a Mass Mutual agent, Kel Bullard, who stated that Floore could obtain additional coverage and benefits at no extra cost. Floore asked Bullard to "put it in writing." On November 18, 1988, Bullard sent Floore a letter confirming the proposed offer. Floore agreed to purchase the new policy (hereinafter referred to as "the 1988 policy").

The application for the 1988 policy that was sent to Floore for his signature asked whether the new policy replaced or changed an existing policy. The agent who filled out the application marked "no" in response to this question. The plaintiff asserts that the defendant marked "no" so as to avoid making certain disclosures that were required when a customer replaces or changes an existing policy to use accrued values to purchase a new policy. The plaintiff contends that the agent intentionally failed to disclose to Floore the drawbacks, disadvantages, and economic losses that Floore would suffer from a change in his policy. The plaintiff states that this constitutes a fraudulent practice known as churning, which Mass Mutual not only failed to prevent, but actually encouraged. It should be noted that the 1958 policy was never cancelled, and remains in effect to this day.

## LAW

The defendant's motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In considering a motion under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th

Cir.1996). Dismissal is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401–1402 (5th Cir.1996).

The defendant has moved to dismiss the plaintiff's claims on the grounds that Floore's claims are barred by the statute of limitations. The plaintiff's claims are subject to the three-year statute of limitations set forth in Miss.Code Ann. § 15–1–49(1). The plaintiff does not dispute the application of the three-year limitations period, but claims that the statute of limitations should be tolled by the doctrine of fraudulent concealment. *See* Miss.Code Ann. § 15–1–67 (1995).

To assert fraudulent concealment, the plaintiff must allege that Mass Mutual concealed the conduct complained of and that the plaintiff failed to discover the facts forming the basis of his claim, despite the exercise of due diligence. *State of Tex. v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988); *United Klans of Am. v. McGovern*, 621 F.2d 152, 153 (5th Cir.1980) (citing *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1169 (5th Cir.1979), *cert. denied*, 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980)). The amended complaint asserts no facts that would toll the statute of limitations for the claims raised by Floore. The documents provided to Floore in 1988 clearly disclosed that the 1988 policy would require premiums throughout the course of his lifetime, and that dividends from the 1988 and 1958 policies would be used to pay those costs.

The November 18, 1988, letter from Bullard to Floore states in pertinent part:

RE: Mass Mutual Policy
   Number 3 043 764

. . . .

Currently, you have the following options on your above numbered policy. This transaction would do the following:

. . . .

B. Purchase an additional $54,025.00 death benefit with absolutely no out-of-pocket expense. This may be accomplished by using your current and

future dividends to pay net premiums due.

Policy number 3 043 764 referenced in the letter refers to the 1958 policy. Thus, the letter from Bullard to Floore, which provides options *"on your above numbered policy"*, clearly indicates that the new policy may be purchased by using the *"current and future dividends"* of the 1958 policy.

On December 16, 1988, Floore signed a form authorizing the use of paid-up additions on the 1958 policy to pay the initial premium on the 1988 policy. On that same date, Floore signed a standing dividend order which authorized the use of dividends from the 1958 policy to pay the premiums on the 1988 policy. The standing dividend order states that it will remain in effect until the owner of the policy submits a written request to terminate the order or until a new standing dividend order is received.

Floore asserts that the defendant's agent told him he could purchase the 1988 policy at no out-of-pocket cost. After the initial surrender of a small amount of paid-up additions from the 1958 policy to pay for an existing loan, the new policy would pay for itself with no additional premiums required from Floore. The plaintiff asserts in his brief that communications from the defendant after the purchase of his 1988 policy effectively concealed the defendant's allegedly fraudulent activity. The plaintiff has submitted a letter from Bullard dated January 19, 1989, in which the agent assures the plaintiff that "I will do my best to keep you informed of any changes in the insurance field that affect you and your family...." The court finds that this letter does nothing to conceal any fraudulent activity, but rather is merely a standard letter from the agent to his customer thanking him for his business and promising to assist the customer with any future insurance needs.

The plaintiff has also submitted the annual statement on the 1958 policy dated June 2, 1989, showing that the policy loan had been paid off and that Floore had $6,734.00 in paid-up additions—down from $11,852.00 in paid-up additions in 1988. The court finds that, rather than showing fraudulent concealment, the 1989 annual statement should have put the plaintiff on notice of the allegedly fraudulent activity that he asserts in his complaint. The 1989 annual statement shows that the plaintiff lost approximately $5,100.00 in paid-up additions (and total insurance coverage), whereas the outstanding loan, with interest, amounted to only $2,250.00. While the face amount of the paid-up additions is not necessarily equal to the cash value of the paid-up additions,[1] this great discrepancy from 1988 to 1989 in the amount of paid-up additions should have raised a red flag for someone who claims that the "new policy could be purchased through the initial surrender of a small portion of the 'paid-up additions' in the existing policy to pay an existing loan" (quoting from the plaintiff's brief).[2]

Finally, the plaintiff submits the 1996 annual statement for the 1958 policy which shows that paid-up additions are down to $769.00 and that total coverage provided by the 1958 policy is $16,069.00. This certainly does nothing to show fraudulent concealment in that, as with the 1989 annual statement, paid-up additions as well as total coverage have decreased from the year before. The plaintiff certainly cannot argue that this was the first time an annual statement revealed such information, because the 1989 statement shows a similar, though much greater, reduction in both paid-up additions and coverage.

In considering the November 18, 1988, letter from Bullard to Floore, the two documents signed by the plaintiff on December 16, 1988, wherein the plaintiff authorizes the use of dividends from the 1958 policy to pay the premiums on the 1988 policy, as well as the 1989 annual statement showing that paid-up additions (and total coverage) on the 1958

---

1. For example, the 1989 annual statement states that the 1989 dividend of $1,057.43 purchased $1,457.00 of paid-up additional insurance.

2. The discrepancy becomes even greater when you consider that the 1989 annual statement indicates that $1,457.00 in paid-up additions were purchased with the 1989 dividend. Thus, the plaintiff actually lost over $6,500.00 in paid-up additions prior to the 1989 dividend being distributed in the form of $1,457.00 in paid-up additions.

policy had decreased by $5,100.00, the court finds that the plaintiff should not be allowed to toll the statute of limitations based on the doctrine of fraudulent concealment. The plaintiff had ample information at the time he purchased the policy (and certainly by June of 1989) that the premiums on the 1988 policy were being paid by the use of paid-up additions on the 1958 policy. Therefore, since the amended complaint was filed well over three years from the date Floore's 1988 policy was issued, the court finds that Floore's claims are barred by the statute of limitations.[3,4]

## CONCLUSION

For the foregoing reasons, the court finds that the defendant's motion to dismiss, in part, plaintiffs' amended complaint should be granted. An order will issue accordingly.

**3.** The plaintiff asserts that the question of when, by the use of reasonable diligence, the fraud could have been discovered is an issue of fact that must be resolved by the jury. However, this is only true if there is a genuine issue of material fact as to when the plaintiff knew, or should have known, of the cause of action. The court finds that the plaintiff has failed to present any evidence which might create an issue of fact as to when he could have discovered the allegedly fraudulent activity.

**4.** The court notes that Floore's claims may also be subject to dismissal for failing to demonstrate any actual injury. *See McArthur v. Time Ins. Co.,* 889 F.Supp. 938, 943–944 (S.D.Miss.1995); *Windfield v. Groen Div. Dover Corp.,* 740 F.Supp. 1230, 1236–1237 (S.D.Miss.1990). Prior to the purchase of the 1988 policy, Floore had approximately $27,000.00 worth of life insurance coverage through Mass Mutual. He now has approximately $70,000.00 worth of life insurance coverage through Mass Mutual without any apparent increase in premium. The amended complaint fails to allege any damages that are specifically associated with the Floore allegations. However, the court will not base its decision on these grounds, since the defendant initially raised this argument in its reply brief, and the plaintiff has not had an opportunity to respond.