# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 8, 2010

No. 10-10337
Summary Calendar

Lyle W. Cayce
Clerk

LYNN WELK; LARRY WELK,

Plaintiffs–Appellants,

v.

DARREN SIMPKINS, Individually; KELLY SIMPKINS, Individually;
DARREN SIMPKINS CUTTING HORSES, INC.,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:09-CV-456

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Lynn Welk and Larry Welk (the Welks) appeal a district court's decision
to grant summary judgment in favor of Darren Simpkins, Kelly Simpkins, and
Darren Simpkins Cutting Horses, Inc. (the Simpkinses) after the district court
determined that the Welks' suit was time-barred. Observing no reversible error,
we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-10337

## I

Darren Simpkins was a horse trainer in Texas who, between 2002 and 2007, trained over two dozen of the Welks' horses. This case involves one of those horses—a cutting horse named Juan Bad Cat. The Welks, who lived in California, delivered Juan Bad Cat to Darren Simpkins for care and training in 2004, and Lynn Welk instructed both Darren and Kelly Simpkins that any medical procedures on the horse needed to be cleared with her or with the Welks' veterinarian in California, Dr. Van Snow.

On June 10, 2005, Dr. Jeff Foland, a veterinarian in Texas, examined Juan Bad Cat and detected some lameness in the horse. Dr. Foland, after obtaining authorization from Darren Simpkins, injected the horse's right stifle with a steroid. Dr. Foland gave the horse a second injection on July 2, 2005. Neither Dr. Snow nor Lynn Welk authorized either of those injections. On July 8, 2005, Dr. Foland, in consultation with Dr. Snow, performed an arthroscopic procedure on the horse's right stifle that uncovered permanent damage in the stifle. This damage made it impossible for Juan Bad Cat to ever compete as a cutting horse, thus diminishing the horse's future value as a sire.

On or about July 13, 2005, Lynn Welk learned of the June 10 and July 2 injections that Dr. Foland gave to Juan Bad Cat. That same day, after learning of the injections, Ms. Welk discussed the horse's situation with both Dr. Snow and Dr. Foland. Dr. Snow denied giving Dr. Foland authorization to inject the horse, while Dr. Foland claimed to have received such authorization from Dr. Snow.

Over the next several months, the Juan Bad Cat incident was a frequent topic of conversation between the Welks and the Simpkinses. For example, Kelly Simpkins repeatedly confirmed that she had delivered Lynn Welk's instructions—that all treatment of the horse needed to be cleared with Dr. Snow or Ms. Welk—to Dr. Foland. And, in a conversation in December of 2005, Larry

2

No. 10-10337

Welk asked Darren Simpkins directly whether Mr. Simpkins had authorized Dr. Foland to inject Juan Bad Cat.  Mr. Simpkins denied having done so.

On June 6, 2007, the Welks initiated a civil action in Texas state court against Dr. Foland.  On August 14, 2007, an attorney for the Welks met and interviewed Darren and Kelly Simpkins. During that interview, the Simpkinses admitted to authorizing Dr. Foland's injections of Juan Bad Cat.  The Welks subsequently sought leave to add the Simpkinses as defendants in the state court action against Dr. Foland, but the state court denied their request.

The Welks instituted the instant suit on August 5, 2009, in the United States District Court for the Northern District of Texas.  The Welks' complaint raised four causes of action: breach of contract, negligence, fraud, and breach of fiduciary duty.  The Simpkinses moved for summary judgment, contending that the applicable statutes of limitations barred the Welks' claims.  The district court agreed and granted the Simpkinses' motion.  This appeal followed.

## II

We review the district court's grant of summary judgment de novo, applying the same standards as the district court.[1]  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2]  "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[3]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but

---

[1] *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009).

[2] FED. R. CIV. P. 56(c)(2).

[3] *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009) (internal quotation marks and citations omitted).

No. 10-10337

refrain from making credibility determinations or weighing the evidence."[4] "In reviewing the entire record, we consider all evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party."[5]

## III

The statute of limitations for a negligence cause of action under Texas law is two years.[6] The Welks' other claims—breach of contract, fraud, and breach of fiduciary duty—are subject to a four-year limitations period.[7] As noted above, the district court determined that these limitations periods barred the Welks' claims against the Simpkinses. In doing so, the district court rejected the Welks' claim that the fraudulent concealment defense tolled the limitations periods.[8]

On appeal, the Welks raise three claims relating to the district court's treatment of their fraudulent concealment defense. First, they contend that genuine issues of fact exist with respect to whether the fraudulent concealment defense tolled the limitations periods on their claims because Darren and Kelly Simpkins affirmatively misrepresented to the Welks that the Simpkinses had not authorized Dr. Foland's injections of Juan Bad Cat. Second, the Welks argue that the district court improperly made credibility determinations and fact-findings when it determined that the fraudulent concealment defense did not toll

---

[4] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[5] *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 429-30 (5th Cir. 2009) (internal quotation marks and citation omitted).

[6] TEX. CIV. PRAC. & REM. CODE ANN. § 16.003.

[7] *Id.* §§ 16.004, 16.051.

[8] *See Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, pet. denied) ("[T]he doctrine of fraudulent concealment tolls or suspends the running of limitations after it has begun because the defendant concealed from the plaintiff facts necessary for the plaintiff to know that he had a cause of action.").

No. 10-10337

the limitations periods in this case. Third, they assert that an informal fiduciary relationship existed between the Welks and Darren and Kelly Simpkins, and that the existence of this relationship meant that Darren and Kelly Simpkins had an affirmative duty to disclose their misconduct to the Welks. The Welks do not appear to dispute that, absent the applicability of the fraudulent concealment defense, their claims against the Simpkinses are time-barred. We address these claims in order.

**A**

A plaintiff raising fraudulent concealment as a defense to the statute of limitations must establish four elements: "(1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception."[9] The Welks argue that Darren and Kelly Simpkins represented that they had not told Dr. Foland to inject Juan Bad Cat and that this misrepresentation justifies tolling the statute of limitations on the Welks' claims until August 14, 2007—the date on which Darren and Kelly Simpkins admitted to authorizing the injections. Reviewing the record de novo, we conclude that the Welks have failed to establish a genuine issue of fact with respect to the fourth element of the fraudulent concealment defense—that they reasonably relied on any deception by Darren and Kelly Simpkins.

"The estoppel effect [of fraudulent concealment] is not permanent, but merely tolls limitations until the plaintiff learns of the facts that give rise to its cause of action or should learn of the facts in the exercise of reasonable diligence."[10] "Knowledge of facts, conditions, or circumstances which would cause a reasonable person to make inquiry leading to the discovery of the

---

[9] *Id.*

[10] *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 746 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

concealed cause of action is in the law equivalent to knowledge of the cause of action for limitation purposes."[11]  Here, the Welks were aware no later than July of 2005 that Dr. Foland had injected Juan Bad Cat without the authorization of either Dr. Snow or Lynn Welk.  We believe that this knowledge, when coupled with the instructions that Lynn Welk delivered to the Simpkinses with respect to the treatment of this particular horse, would cause a reasonable person to conduct an inquiry into whether the Simpkinses had authorized Dr. Foland to inject the horse.  Indeed, Lynn Welk herself testified in her deposition that these facts caused her to consider the possibility that Darren Simpkins authorized the injections, and that it was this suspicion that led to Larry Welk, in December of 2005, asking Darren Simpkins whether he had authorized Dr. Foland to inject the horse.

It is true, of course, that Darren Simpkins, when asked, denied his role in the injections, but we do not believe that this denial in any way alters the inapplicability of the fraudulent concealment defense to this case.  Texas courts do recognize that "affirmative misrepresentations can support a fraudulent concealment defense,"[12] but a misrepresentation only tolls the statute of limitations until "the plaintiff knew enough that a reasonable person in the plaintiff's place would disbelieve the defendant's denial of improper conduct."[13]  As we have recognized in another context, a denial of wrongdoing generally "is no more an act of concealment than is silence."[14]  A denial can constitute concealment, but only when "the parties are in a fiduciary relationship" or "the

---

[11] *Id.* at 747.

[12] *Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 891 (Tex. App.—Austin 1997, pet. denied).

[13] *Mitchell Energy Corp.*, 958 S.W.2d at 442.

[14] *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1532 (5th Cir. 1988).

No. 10-10337

circumstances indicate that it was reasonable for the plaintiff to rely on defendant's denial."[15]  Here, the parties were not in a fiduciary relationship,[16] and our review of the record has not uncovered any circumstances that would make it reasonable for the Welks to rely on Darren Simpkins' single denial of wrongdoing as a reason to cease their inquiry into the Simpkinses' role in the injections given to Juan Bad Cat.  We believe that further inquiry, undertaken diligently, would have led to the discovery that the Simpkinses authorized Dr. Foland to inject the horse.

## B

The Welks also argue that the district court improperly made credibility determinations and drew inferences from the evidence in favor of the Simpkinses when it granted summary judgment to the Simpkinses.  Specifically, the Welks point to portions of the district court's order that suggest that the district court discredited the Welks' version of events—that Darren Simpkins, in December of 2005, specifically denied ever having authorized Dr. Foland to inject Juan Bad Cat but then admitted as much to the Welks' attorney on August 14, 2007.  The Welks also assert that the district court inappropriately speculated that Darren Simpkins admitted to authorizing the injections of Juan Bad Cat in phone calls with Lynn Welk during June of 2005.

Of course, it is inappropriate for a court, at the summary judgment stage, to make a credibility determination between parties' differing versions of events.[17]  Here, however, the credibility determinations that the Welks claim the district court erroneously made do not appear to have served as the basis for the district court's decision.  The district court determined that the Welks could not

---

[15] *Id.* at 1532-33.

[16] *See infra* Part III.C.

[17] *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005).

succeed with their fraudulent concealment defense to the statute of limitations because "reasonable inquiry by [the Welks] would have provided them more than four years before this action was instituted sufficient information from which they could infer that one of the defendants had authorized Dr. Foland to make the injections." In other words, the district court, like this court, determined that the Welks could not establish the "reasonable reliance" prong of the fraudulent concealment defense. Since the allegations of error in the district court's order that the Welks now raise do not relate to that element of the defense, but instead address whether Darren Simpkins ever denied and then admitted his role in the injections, they do not serve as a basis for reversing the district court's judgment.

The Welks' argument that the district court relied on records of a phone conversation between Darren Simpkins and Lynn Welk on June 13, 2005, to infer improperly that Darren Simpkins admitted to Lynn Welk on that date that he had authorized an injection of Juan Bad Cat is also meritless, as it appears to stem from a misreading of the district court's order. The only inference that the district court appears to have drawn from the records of this conversation is "that Mr. Simpkins informed Ms. Welk of the horse's June 10, 2005, treatment and would have responded to whatever inquiry Ms. Welk might have made." The district court's inference relates to the date that Darren Simpkins informed Lynn Welk that the injections occurred; it does not address the date that Darren Simpkins actually admitted to authorizing those injections. Since the Welks do not dispute that they had knowledge of the injections no later than July 13, 2005—more than four years prior to the commencement of their action—the district court's speculation that the Welks may have known of the existence of the injections in June of 2005 is of no import to the relevant issue of whether the Simpkinses fraudulently concealed their role in authorizing those injections.

8

No. 10-10337

## C

Finally, the Welks contend that an informal fiduciary relationship existed between the Welks and Darren and Kelly Simpkins, and that the existence of this relationship meant that Darren and Kelly Simpkins had an affirmative duty to disclose their misconduct to the Welks. Specifically, the Welks point to their five-year-long business relationship with Darren and Kelly Simpkins; the fact that the parties often attended horse shows together, at which times they would share meals; the fact that Darren and Kelly Simpkins visited the Welks in California; the fact that Lynn Welk and Kelly Simpkins often conversed on the phone; and the fact that Kelly Simpkins once confided a personal matter to Lynn Welk. The Welks claim that these facts established a genuine issue with respect to the existence of an informal fiduciary relationship under Texas law, which recognizes that such relationships may arise when "one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one,"[18] and that the district court erred when it granted summary judgment to the Simpkinses.

"Although . . . the existence of a[n] [informal fiduciary relationship] is ordinarily a question of fact, when the issue is one of no evidence, it becomes a question of law."[19] The district court determined that the Welks presented no evidence of an informal fiduciary relationship between the Welks and Darren and Kelly Simpkins, and we agree. At best, the Welks' evidence shows that they maintained a business relationship with Darren and Kelly Simpkins and that the couples interacted socially incident to that relationship. "[T]he fact a business relationship has been cordial and of long duration is not by itself

---

[18] *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992) (internal quotation marks and citation omitted).

[19] *Id.*

No. 10-10337

evidence of a [fiduciary] relationship."[20] To be sure, the Welks do appear to have trusted Darren and Kelly Simpkins, but "mere subjective trust alone is not enough to transform arms-length dealing into a fiduciary relationship."[21] "Businessmen generally do trust one another," and the evidence in this case establishes nothing more than the cordiality that often characterizes business relationships.[22]

*   *   *

For the above reasons, the judgment of the district court is AFFIRMED.

---

[20] *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ).

[21] *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962).

[22] *Id.*; *see also Crim Truck & Tractor Co.*, 823 S.W.2d at 594 ("The fact that one businessman trusts another . . . does not rise to a confidential relationship.").