Clyde **DeLAUGHTER**, d/b/a **Bogalusa Dairy Products**, Appellant,

v.

The **BORDEN COMPANY**, Appellee.

No. 22342.

United States Court of Appeals
Fifth Circuit.

Aug. 9, 1966.

Rehearing Denied Nov. 23, 1966.

Richard F. Knight, Bogalusa, La., for appellant.

Richard B. Montgomery, Jr., New Orleans, La., Richard J. Flynn, Washington, D. C., Joseph A. Greaves, George W. McBurney, Stuart S. Ball, Chicago, Ill., for appellee. Montgomery, Barnett, Brown & Read, New Orleans, La., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel.

Before JONES and GEWIN, Circuit Judges, and HUNTER, District Judge.

**GEWIN, Circuit Judge:**

In a state antitrust action for treble damages allegedly resulting from appellee's (defendant) violation of the Louisiana Orderly Milk Marketing Act, removed to the United States District Court for the Eastern District of Louisiana on the basis of diverse citizenship, 28 U.S.C. § 1332, the court held that appellant's (plaintiff) cause of action had prescribed under the one-year provision of the Louisiana Civil Code, Article 3536 and granted the defendant's motion for summary judgment, Rule 56, F.R.Civ.P. Plaintiff appeals from the order of the District Court dismissing the suit.

Plaintiff,[1] a resident of Washington Parish, Louisiana, was engaged in the manufacturing, processing and packaging of milk and various milk products as Bogalusa Dairy Products with his main office in the City of Bogalusa, Washington Parish, Louisiana. The defendant, The Borden Company, also engaged in the manufacturing, processing and packaging of milk and milk products, domiciled in New Jersey with its principal office in New York City, operates plants and establishments at various places in Louisiana. Both plaintiff and defendant are governed by the provisions of the Louisiana Orderly Milk Marketing Act, LSA–R.S. 40:940.1–40:940.23 (1965) and come under the classification of a processor, handler or distributor as defined by LSA–R.S. 40:940.2(7) (8) (1965).

Plaintiff instituted an antitrust action against Borden on March 25, 1961, and alleged that Borden, accrued, offered and paid rebates and discounts from sometime prior to February 1, 1960, until February 9, 1961,[2] in violation of Section 940.3(1) of the Orderly Milk Marketing Act which prohibits a processor, handler, or dis-

---

1. Mr. Clyde DeLaughter instituted this action against the defendant, The Borden Company, on March 25, 1961. On October 1, 1963, by order of the District Court, Mr. Ingard Johannesen, trustee in the matter of William Clyde DeLaughter, d/b/a Bogalusa Dairy Products, Bankrupt No. 63–326, was made an additional party plaintiff.

2. On February 9, 1961, The Borden Company was temporarily restrained, enjoined and prohibited from giving and offering discounts and rebates and from accruing such discounts and rebates in customers' accounts by an order entered in Pearce v. The Borden Company, No. 80,-312, 19th Judicial District Court, Parish of East Baton Rouge. The case remains on the docket of that court.

tributor from giving or offering any discount or rebate in connection with the sale of products and Section 940.10 which prohibits a processor, handler, or distributor from giving or offering rebates or discounts with the intent or with the effect of unfairly diverting trade from a competitor or of injuring a competitor. Because of the above alleged violations, plaintiff also averred that he had sustained injury to his business and sought treble damages pursuant to Section 940.15 of the Act.

Borden, in its amended answer, asserted that with respect to all matters which occurred more than one year prior to the filing of this action, March 25, 1961, plaintiff's claim was prescribed by virtue of Article 3536 of the Louisiana Civil Code, and that various sections of the Act were unconstitutional in that they deprived Borden of its property without due process of law. In the pretrial hearing on these two affirmative defenses, Borden moved for summary judgment. The District Court in granting the motion did not pass upon Borden's constitutional defense but held that plaintiff's entire claim was barred by prescription.

We do not reach the merits of this case, whether Borden committed any of the acts set forth in plaintiff's complaint or whether these acts violated the Orderly Milk Marketing Act, nor do we reach the contention that certain sections of the Act are unconstitutional; for the District Court has not ruled on these issues. We are confronted with the sole issue of whether the District Court erred in its determination that the Louisiana prescription statutes barred plaintiff's entire cause of action.

The pertinent portions of the Louisiana prescription statutes, LSA–C.C. Art. 3536 and 3537 read thusly:

"Art. 3536. The following actions are also prescribed by one year:

That for * * * damages * * * resulting from offenses or quasi offenses."

"Art. 3537. The prescription mentioned in the preceding article runs:

* * * from that on which the injurious words, disturbance or *damage* were sustained." (Emphasis added)

The District Court found that the one year period of limitation applied to the Orderly Milk Marketing Act by analogizing Loew's Inc. v. Don George, Inc., 237 La. 132, 110 So.2d 553 (1959) where the Louisiana Supreme Court applied the provision to a private anti-monopoly action brought under the State Monopoly Act for "injury to business." [3] Neither we nor the parties to this appeal question this holding.

The District Court then determined that the "injury to business" complained of by plaintiff, was a single wrong constituting a single cause of action. Applying this determination to the language of the prescription statute, Article 3537, the court concluded that prescription began to run on the "single cause of action" from the time plaintiff acquired sufficient knowledge of the offense, the "single wrong," to realize that he was sustaining damages. According to the testimony of Elton DeLaughter,[4] plaintiff's son and former assistant manager of the Bogalusa Dairy Products, the plaintiff knew of Borden's allegedly injurious activities in February of 1960 and had even heard rumors to the same effect

---

3. The District Court observed that " * * * there is no law specifically applying the one-year period of limitations to the Milk Marketing Act * * *."

4. "Mr. McBurney: When did you first become aware of that [the discount]?

"Mr. DeLaughter: In 1960, February, when the discount was paid off.

"Mr. McBurney: And that was the first knowledge that you had that they offered discounts?

"Mr. DeLaughter: No, it wasn't the first knowledge I had. It had been rumored all around that that was going on.

"Mr. McBurney: When did you first hear rumors to that effect?

"Mr. DeLaughter: Oh, I heard rumors earlier than that, but it didn't affect us too much until they paid the discounts off, then it affected us."

prior to February, 1960. Therefore, the District Court held that prescription began to run in February of 1960, and since legal action was not commenced until March 25, 1961, plaintiff's cause of action was barred.

The plaintiff contends the District Court erred in its finding of a single wrong constituting a single cause of action, which oddly enough was plaintiff's own argument before the court, because it failed to apply the provisions of Section 940.15 of the Orderly Milk Marketing Act which states in part: "Each day's violation shall constitute a separate offense." Applying this provision to the prescription statute, plaintiff argues that prescription begins to run on each separate offense when that offense causes damage. Recognizing that an offense can cause the continuing creation of damages and that the prescription statute does not specifically say that the period of limitation begins to run when damages are *first* sustained, plaintiff concludes, therefore, that any wrongful acts of Borden which caused plaintiff to sustain damages during the year March 25, 1960 to March 25, 1961, can be the basis of a cause of action for damages so sustained. Thus it is argued, the prescription statute begins to run anew each day the alleged offense causes new damages. Since it is a jury question as to when and to what extent damages were sustained by plaintiff as a result of Borden's allegedly wrongful conduct, he argues it was error for the District Court to dismiss the suit on a motion for summary judgment.

The Borden Company contends that prescription begins to run from the date the alleged wrongful act causes immediate and apparent damage and after one year from this date the prescription statute is a bar to any action based on these wrongful acts, even though the damages resulting from the acts continue to accrue to a date within a year prior to commencement of the action. Thus all causes of action based upon allegedly wrongful acts of Borden from which the plaintiff sustained damages prior to March 25, 1960, are barred. This would be true, Borden contends, even if plaintiff's interpretation of the Act is correct, that each violation gives rise to a separate and distinct cause of action. But, if plaintiff's interpretation is correct, Borden admits [5] that the prescription statute has not barred a cause of action based on its wrongful acts committed after March 25, 1960, which caused damage to plaintiff's business. Borden also points out that the District Court held that prescription began to run from the time plaintiff acquired sufficient knowledge of the offense to realize that he was sustaining damage. Borden contends that according to plaintiff's own testimony,[6] he was aware of Borden's allegedly wrongful acts and knew that he was sustaining immediate and apparent damage.

The District Court, Borden and the plaintiff have presented to us varied approaches to the determination of whether plaintiff's claims are barred by the Louisiana prescription statute. We begin our study of the problem with the District Court's finding that the acts of Borden created a single cause of action. In view of the language of the statute which clearly states that such is not the

---

5.   See note 7 infra.

6.   In his amended complaint plaintiff alleged that he had suffered actual loss from "the date said discounts were first paid." This assertion was repeated in the testimony of plaintiff's son, Elton DeLaughter. See note 4 supra. Elton DeLaughter amplified these statements in testimony concerning specific non-processing retailers: For example, with respect to National Foods, he stated that plaintiff lost its exclusive position with respect to gallon jug sales and its display space in these stores "immediately after Borden paid off the discount" on February 1, 1960, and defined immediately to mean "within the next three weeks to a month." Retailers, who received discounts, reduced their purchases from plaintiff shortly after February 1, 1960, and plaintiff discussed these reductions with them in February or March 1960. The refusal of some retailers to deal with plaintiff because of Borden discounts occurred in 1958, 1959 and early 1960, prior to March 25.

case, "[e]ach day's violation shall constitute a separate offense," we find the court to be in error. Therefore, we conclude that each act committed by Borden in violation of a provision of the Orderly Milk Marketing Act is a separate and distinct offense which gives rise to a separate cause of action. We take note of the fact that the reasoning of the District Court is not seriously urged by either of the parties in support of its respective contentions.

■ Having determined that each act gives rise to a separate cause of action and therefore the prescriptive period runs separately for each act, we find that plaintiff's claim is not barred in its entirety.[7] Clearly, those acts of Borden committed after March 25, 1960, for which plaintiff has suffered actual damages may be the basis for a cause of action, for they are within the statutory period.

Calculating when the period began to run on the acts of Borden committed prior to March 25, 1960, presents the major problem in this case. We agree with the District Court's holding that one must know or should have known that he is sustaining an actionable injury before the prescription period begins to run. See R. J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (5 Cir. 1963). It has been established that plaintiff knew of Borden's injurious practices and also knew of the existence of some injury prior to March 25, 1960. Does the failure to bring suit within one year bar a cause of action on those same acts for new damages sustained after March 25, 1960?

Borden presents us with a forceful argument that once damage is sustained from an act even though additional damage is continuously created for more than a year, the period begins to run when initial damage is sustained and after one year the cause of action is barred. We faced this identical problem in Crummer Co. v. DuPont, 223 F.2d 238 (5 Cir. 1955). In that case plaintiff, alleging that the defendant violated federal antitrust laws, did not bring suit until the Florida three year statute of limitations had run. Although we were not concerned with the Louisiana prescription statute in that case, the Florida statute of limitations begins to run, as does the Louisiana statute, when damage is sustained. In *Crummer* we viewed each act of the defendant as a separate cause of action and stated that although his acts committed within the period which resulted in damage to the plaintiff could be subject to suit, the statute of limitations could not be extended to acts done beyond the three years. The Louisiana courts have uniformly treated the problem in a similar manner. Home Ins. Co. v. Highway Ins. Underwriters, 52 So.2d 449 (La.App. 1951) and cases cited therein. In these cases plaintiff argued that he sustained continuous damages and that, therefore, the prescription of one year did not begin to run until the day on which he suffered the damage. This argument has not been accepted by the courts. Instead the courts have declared that even though damages resulting from acts were destined to be suffered in the future, if present damages were caused which could be the basis of a judgment, the statute runs.

The plaintiff relies on Delta Theaters v. Paramount Pictures Inc., et al., D.C., 158 F.Supp. 644, a federal antitrust case where plaintiff alleged conspiracy be-

---

7. In its brief Borden states in substance as follows:

Three of the discount payments challenged by plaintiff were made on March 30, 1960, and were thus within the year preceding the commencement of this action. Under the construction of the Act urged by plaintiff to this Court, and by Borden both here and in the court below, that each violation gives rise to a separate and distinct cause of action, plaintiff's claims based on damages alleged to have resulted from these three payments would not be deemed prescribed. These discount payments constituted a prima facie violation of Section 940.3(1), and plaintiff alleges that he sustained injury as a result of these payments. He would be entitled, so far as prescription is concerned, to try to prove whatever damages he sustained from these three payments.

tween members of the film industry under the Clayton Act. In *Delta* the court was faced with interpreting the Louisiana prescription statute. It recognized where defendant's acts can be readily separated and the damages of each determinable, the statute of limitations runs when each act causes plaintiff damages. But the court held that it was impossible to apply this rule to a complex business combination, such as the film industry, where the acts of the defendant are not individually related nor contemporaneous with the resulting damage. Therefore, the court applied the statute of limitations to the damage as it occurred.[8] See also Streiffer v. Seafarers Sea Chest Corp., D.C., 162 F.Supp. 602. Thus the plaintiff was allowed to recover all damage sustained within one year before filing suit.

We reviewed these cases in our decision in Reynolds and summarized them thusly:

"Continuing damage, however, will toll the statute—in the sense that damage sustained within the year before suit was filed is recoverable, if it can be identified as having been sustained within the year as distinguished from damage sustained before that year."

We think that the cases put forward by the plaintiff are more similar to the situation before us and are most persuasive. The fact that *Delta* was a conspiracy action does not sufficiently distinguish it from the instant case to make it inapplicable. Surely here, as in *Delta*, we are dealing with complex business organizations, especially in regard to The Borden Company. The acts of which plaintiff complains are the accrual, offer and payment of rebates. It would be unreasonable to conclude that each act—

each accrual, each offer, each payment—produced a determinable damage which began the running of the statute of limitations. It would be more correct to say that each offense contributed in some part at some time to cause the plaintiff's damage. Despite the fact that plaintiff admits knowledge of Borden's acts and that various retailers had cut his display space and purchases prior to March 1960, the difficulty of saying that plaintiff suffered a sufficient damage at that point to be the basis of a judgment, is pointed out by the fact that plaintiff actively continued in business for over three years. Also the claim of immediate and apparent damage is lessened by the fact that of plaintiff's more than 300 wholesale customers, plaintiff's testimony regarding injury prior to March 25, 1960, concerned only a token number of customers. It is at this point that this case can be distinguished from *Crummer*. The facts show in *Crummer* that plaintiff suffered tremendous injury capable of running the statute more than three years before bringing suit. Thus *Crummer* is quite different from the case before us where the immediacy and apparency of the injury are questionable.

We do not adopt plaintiff's theory that the Louisiana prescription statute means when each new damage arises the statute runs again. For in those situations where there is occasioned a readily apparent and immediate injury the statute begins to run and does not begin anew even though the extent of damages becomes greater at a later date. We only hold that where an act does not effect a traumatic injury but produces its ill effect by the passage of time, and it would be impossible to designate the exact mo-

---

8. The Court stated:
   "For these reasons, it is the opinion of this court that the better rule is that stated in the leading case of Bluefields S. S. Co. v. United Fruit Co., 3 Cir., 243 F. 1, 20: 'The statute began to run when the cause of action arose, and the cause of action arose when the damage occurred. Then action might have been brought.' In the case of successive damages suffered day by day from a continuing conspiracy, the statute begins to run on each day's damage as it occurs. When suit is brought, the plaintiff may recover only for damages inflicted during the period of limitation immediately preceding the filing of the complaint. In the present case, therefore, Article 3536 of the Louisiana Civil Code will bar recovery for all damages suffered more than one year prior to the filing of this complaint on January 8, 1953."

ment when the act produced the requisite damage to start the running of the statute of limitations, we allow recovery for all damages sustained within one year prior to filing suit.

The decision of the District Court is reversed and the case is remanded for a determination of the facts on the merits; and if Borden's acts are found to be in violation of the Orderly Milk Marketing Act, the plaintiff may predicate his cause of action on each of defendant's acts and may recover for all damages he has sustained within one year of filing suit. Again we emphasize that the constitutional issue raised by Borden is still before the District Court, and nothing said in this opinion is to be construed as a determination of that issue.

Reversed and remanded.