665 So.2d 120 (1995)
NATIONAL COUNCIL ON COMPENSATION INSURANCE
v.
QUIXX TEMPORARY SERVICES, INC., New Orleans Corporation, Inc., David L. Barrios, Pierre C. Barrios and Aparicio, Walker & Seeling, Inc.
No. 95-CA-0725.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1995.
*121 Stewart E. Niles, Jr., Edward D. Wegmann, Virginia W. Gundlach, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Plaintiffs/Appellants.
Michael R. Allweiss, Max J. Cohen, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for Appellee, Aparicio, Walker & Seeling, Inc.
Robert E. Leake, Jr., Stanton E. Shuler, Jr., Leake & Andersson, New Orleans, for Defendant, Pierre C. Barrios.
Before BYRNES, PLOTKIN and WALTZER, JJ.
PLOTKIN, Judge.
Appellants appeal the granting of a peremptory exception of liberative prescription dismissing their claim for damages arising from negligent misrepresentation. We affirm the dismissal of appellants' prescribed action.
On January 16, 1989, Pierre Barrios on behalf of Quixx Temporary Services (Quixx) applied to the National Council on Compensation Insurance (NCCI) for worker's compensation insurance. Aparicio, Walker & Seeling (AWS) signed Quixx's application as agency and producer. Based upon the information provided by Quixx in its application, the NCCI found Quixx to be eligible for worker's compensation insurance and estimated Quixx's premium. The NCCI then forwarded the application to Aetna Casualty & Surety Company (Aetna), who issued a worker's compensation insurance policy to Quixx. Aetna renewed the policy in 1990, 1991 and 1992.
On February 16, 1990, David Barrios on behalf of the New Orleans Corporation (NOC) applied to the NCCI for worker's compensation insurance. AWS signed NOC's application as agency and producer. Based upon the information provided by NOC in its application, the NCCI found NOC to be eligible for worker's compensation insurance and estimated NOC's premium. The NCCI then forwarded the application to Aetna, who issued a worker's compensation policy to NOC. Aetna renewed the policy in 1991.
NCCI and Aetna allege that Pierre Barrios misrepresented Quixx's payroll and the nature of its business on its NCCI application to obtain worker's compensation insurance for a substantially reduced premium. NCCI and Aetna also allege that David Barrios misrepresented NOC as a new business distinct from Quixx on its NCCI application to escape Quixx's risk history and obtain a lower premium based on a lower experience rating. NCCI and Aetna allege that they have suffered damages in excess of $800,000 as a result of these misrepresentations.
On November 27, 1991, NCCI and Aetna filed suit in the United States District Court for the Eastern District of Louisiana. AWS was served through its president with a copy of the summons and complaint in the federal suit on January 24, 1992. Pierre Barrios was served on January 28, 1992. The suit in federal court was ultimately dismissed for lack of diversity jurisdiction. NCCI and Aetna filed suit in Civil District Court for Orleans Parish on March 5, 1992. Defendants' peremptory exception of liberative prescription was granted on December 20, 1994.
On May 11, 1990, NCCI at the request of Aetna inspected Quixx and NOC at their shared office. The NCCI inspector was informed by David Barrios that Quixx and NOC were commonly owned. The inspection report produced by NCCI indicated the common ownership of Quixx and NOC. NCCI's Experience Rating Plan Manual indicates that business entities are combinable if they have common majority ownership. From this evidence, the trial judge concluded that the plaintiffs should have discovered sufficient *122 information to start prescription running no later than the May 11, 1990 inspection. The trial judge also concluded that these circumstances did not amount to a continuing tort and that prescription had not been suspended by contra non valentem. Therefore, the trial judge ruled that any action for negligent misrepresentation had prescribed eight months before the defendants were properly served in the federal suit.
The delictual action of negligent misrepresentation was recognized by the Louisiana Supreme Court in Devore v. Hobart Mfg. Co., 367 So.2d 836, 839 (La.1979). To prevail in an action for negligent misrepresentation, the plaintiff must prove that the defendant had a duty to supply correct information, that the defendant breached that duty, and that the defendant's breach caused damages to the plaintiff. Beal v. Lomas and Nettleton Co., 410 So.2d 318, 321 (La.App. 4th Cir.1982). The action for negligent misrepresentation arises ex delicto, see, e.g., Smith v. Remodeling Service, Inc., 94-589, p. 7 (La.App. 5th Cir. 12/14/94), 648 So.2d 995, 999-1000; and is subject to the one year prescriptive period of Civil Code article 3492, see, e.g., Cagle v. Loyd, 617 So.2d 592, 600 (La.App. 3d Cir.), writ denied, 620 So.2d 877 (La.1993).
Prescription is interrupted by the commencement of an action in a court of competent jurisdiction and venue. La.C.C. art. 3462. If an action is commenced in a court lacking jurisdiction or a court of improper venue, prescription may be interrupted by service of process within the prescriptive period. Id.; see, e.g., Cochren v. Louisiana Power & Light Co., 94-0002, p. 5 (La. App. 4th Cir. 6/15/94), 639 So.2d 342, 345, writ denied, 94-1899 (La. 10/28/94), 644 So.2d 654. Appellant does not dispute the applicability of a one year prescriptive period to this delictual action for negligent misrepresentation. Appellee does not dispute that proper service was accomplished in January 1992. The only question for review is whether service occurred in time to defeat liberative prescription.
To decide whether the action was timely, it is first necessary to determine when liberative prescription began to run. Prescription in actions arising ex delicto commences on the day actual and appreciable damage is sustained. La.C.C. art. 3492. The damage need not be calculable or fully incurred but must not be merely speculative. Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La.1992). Appellants claim that they did not sustain actual and appreciable damages until an audit performed on May 30, 1991 revealed that Quixx and NOC had substantially underpaid premiums, and until Quixx and NOC refused to pay the premiums owed. When appellants discovered the harm, however, is only relevant in determining how long the cause of action remained in suspense by operation of contra non valentem.
According to appellants, as a result of misrepresentations made on applications for worker's compensation insurance, they issued polices for substantially reduced premiums. Therefore, they sustained actual and appreciable damage when the policies were issued and the first premium was accepted. This damage, although undetermined, was neither speculative nor contingent upon a subsequent event, unlike the damage sustained in Hero Lands Co. v. Borello, 459 So.2d 658 (La.App. 4th Cir.1984), writ denied, 462 So.2d 651 (La.1985), Rayne State Bank & Trust Co. v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986), or Braud v. New England Ins. Co., 576 So.2d 466 (La.1991). Therefore, the cause of action on the first policy arose when the policy was issued to Quixx in January 1989 and the cause of action on the second policy arose when the second policy was issued to NOC in March 1990. Liberative prescription would have commenced at this time unless delayed by the continuing tort doctrine or suspended by contra non valentem.
Appellants claim that the commencement of liberative prescription should be delayed because appellees committed a complex business tort that involved continuous, cumulative misrepresentations analogous to a continuing tort. Liberative prescription does not commence until a continuing tort *123 ceases. See, e.g., South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531, 532-33 (La.1982). Continuing damages do not suffice to create a continuing tort; there must also be continuing acts of fault. Id. The continuing tort doctrine was expanded in Bustamento v. Tucker, 607 So.2d 532 (La. 1992), to encompass repeated acts that when viewed in isolation might not be tortious. The requirement of continuing action coupled with continuing damage, however, remains. Appellants have not alleged any specific acts of misrepresentation beyond those alleged to have occurred in the applications of Quixx and NOC to the NCCI.
Appellants, however, claim that appellees were under a continuing duty to provide accurate information to elevate these two alleged misrepresentations into continuing tortious acts sufficient to delay the commencement of prescription. The only authority cited by appellants in favor of this position is readily distinguished. Cagle v. Loyd, supra, unlike the present case, contains continuous and cumulative conduct reminiscent of Bustamento v. Tucker, supra. In Bustamento, a forklift operator subjected a coworker to harassment almost daily for two years. Bustamento, supra, at 534. In Cagle, a banker dominated the economic lives of cattle ranchers, reassuring the ranchers whenever they began to lose confidence in him:
In short, it was part of Loyd's apparent genius in the field of public relations that, the moment the slightest doubt in his abilities emerged, he could assuage it and renew the plaintiffs' trust and confidence in him, and their reliance on his authority. Such was his domination and control that the plaintiffs never knew that the cause of their problems was Loyd himself.
Cagle, supra, at 599. Cagle does not stand for the proposition that the breach of a duty to provide correct information on a insurance application is a continuing tort until the misrepresentation is corrected or discovered. Instead, despite the reference to Bustamento in dicta, Cagle was disposed of on the basis of contra non valentem because plaintiffs could not have reasonably been expected to have discovered the cause of action. Cagle, supra, at 599-602. No conduct has been alleged by appellants that is comparable to Cagle`s constant manipulation or Bustamento`s continuing harassment.
Finally, appellants invoke the maxim contra non valentem agere nulla currit praescriptio to suspend prescription. In particular, appellants argue that prescription should be suspended because they were prevented from acting by appellees' misrepresentations and by a continuing relationship of trust with appellees.
Under exceptional circumstances, courts dispense with prescription in the interests of justice. See La.C.C. art. 3467 cmt. (d); see also Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598, 606 (1916) ("No law was ever enacted which contemplated the defeat of its purposes by fraud, and no court was ever organized which would knowingly permit a litigant to profit by his wrong."). Four exceptional circumstances have been gathered under the medieval rubric contra non valentem by Louisiana courts, which list has been treated as exhaustive although sometimes broadly construed. The third and fourth exceptional circumstances are as follows:
... (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.
Modern jurisprudence also recognizes a fourth type of situation where contra non valentem applies so that prescription does not run: Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. (This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned).
Corsey v. State, through Dept. of Corrections, 375 So.2d 1319, 1321-22 (La.1979) (footnote, citations and emphasis omitted).
Appellants dispute the trial judge's finding that they had discovered sufficient information on May 11, 1990 for the cause of action to be known or reasonably knowable. Prescription runs from the time *124 at which the plaintiff has actual or constructive knowledge of the tortious act, which is the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry. See, e.g., Adams v. National Bank of Commerce, 93-2346, 94-0486, p. 5 (La.App. 4th Cir. 9/29/94), 644 So.2d 219, 223, writ denied, 94-3053 (La. 2/3/95), 649 So.2d 411. The heart of the inquiry into constructive knowledge is the reasonableness of plaintiff's inaction. See Jordan v. Employee Transfer Corp., 509 So.2d 420, 423-24 (La. 1987).
We agree that appellants could not have had actual or constructive knowledge of the cause of action at the time the negligent misrepresentations are alleged to have been made. We cannot say, however, that the trial judge's determination that appellant's inaction was unreasonable after May 11, 1990, when the common ownership of the businesses was discovered, was in error. This case is not like Adams, supra, in which the verbal misconduct was tortious on its face. But neither is it like Cagle, supra, in which the tortfeasor engaged in such extensive subterfuge as to make it impossible for the plaintiffs to discover before his suicide that they had been harmed. In this case, appellants are sophisticated entities with expertise in worker's compensation insurance.
Appellants also claim exception to liberative prescription should be made because they are victims of their relationship of trust with appellees, relying on Plaquemines Parish Comm'n Council v. Delta Development Co., 502 So.2d 1034 (La.1987). The circumstances of this case do not rise to the level of active concealment and misconduct necessary to suspend prescription under that decision. See Plaquemines, supra, at 1057-1058. Nor were appellants and appellees in a relationship comparable to the affirmative fiduciary relationship of a public official to a political subdivision, as in Plaquemines.
Therefore, the granting of the exception of liberative prescription against appellants is affirmed.
AFFIRMED.