684 So.2d 1024 (1996)
STATE of Louisiana, ex rel. Richard P. IEYOUB, Attorney General, et al.
v.
BORDENS, INC.
No. 95-CA-2655.
Court of Appeal of Louisiana, Fourth Circuit.
November 27, 1996.
Rehearing Denied January 16, 1997.
*1025 Richard P. Ieyoub, Attorney General, Jane Bishop Johnson, Assistant Attorney General, Baton Rouge, for Plaintiff/Appellee.
Alston & Bird, Michael A. Doyle, Atlanta, GA, and Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., Edward H. Bergin, Pauline F. Hardin, Nan Roberts Eitel, New Orleans, for Defendant/Appellant.
Before BARRY, KLEES and ARMSTRONG, JJ.
*1026 BARRY, Judge.
On October 10, 1994 the State ex rel. the Attorney General filed a petition for treble damages (pursuant to Louisiana Anti-Monopoly Statute, La. R.S. 51:132, 51:137 and 51:138) against Borden's Inc. (Borden) in state court.[1] The Attorney General sued on behalf of a number of Louisiana school systems alleging the schools did not receive competitive bids or pay competitive prices for milk; and on behalf of school children who paid inflated prices due to bid-rigging.[2] Attached to the petition was: an October 12, 1993 federal criminal antitrust complaint; Borden's guilty plea agreement; a federal judgment which fined Borden $750,000 for its participation in a conspiracy to rig bids (Sherman Antitrust Law) which was signed April 14, 1994 and entered April 18, 1994.[3] Borden removed the case to federal court, but it was remanded to state court with a declaration that the Louisiana Attorney General had authority to sue in a parens patriae capacity, and Louisiana had a quasi-sovereign interest in the economic well-being of its citizens and was a real party in interest. In state court Borden filed an exception of prescription which was overruled.

THE LAW
La. Const. art. IV, § 8 and La. R.S. 13:5036 provide the Attorney General's authority to institute proceedings to protect the state's interests. La. R.S. 51:138 provides authority to file suit to enforce the Antitrust Law. Here the State filed the action on behalf of the school systems and the citizens of the state as parens patriae, literally "parent of the country," the concept of "standing" which is utilized to protect quasi-sovereign interests such as the general economy of the state. State attorney generals have parens patriae authority to bring antitrust actions on behalf of state citizens. See generally Alfred L. Snapp and Son, Inc. v. Puerto Rico ex rel., Barez, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982); State v. Time, Inc., 249 So.2d 328 (La.App. 1st Cir.1971), writ denied 259 La. 761, 252 So.2d 456 (La. 1971); Black's Law Dictionary, 1003 (5th Ed.1979); National Association of Attorneys General, L. Ross, ed., State Attorneys General: Powers and Responsibilities, 91-92.[4] A final judgment in a criminal prosecution by the United States "shall be prima facie evidence" against the defendant in any civil proceeding as to all matters which would be res judicata between the parties to the suit or prosecution. "[R]unning of prescription of a private right of action arising under these laws and based in whole or in part on any matter complained of in the proceeding shall be suspended during the pendency of the [federal criminal] proceeding." La. R.S. 51:132.
There is no statute of limitation in La. R.S. 51:121 et seq., the Louisiana Anti-Monopoly Law, more particularly R.S. 51:137 which provides for recovery of treble damages. There is one Louisiana case which discusses a prescriptive period. In Loew's, Incorporated v. Don George, Inc., 237 La. 132, 110 So.2d 553 (La.1959), the Supreme Court held that an antitrust action sounds in tort and the one year prescriptive period of La. C.C. art. 3492 applies in a private action. See also Delaughter v. Borden Company, 364 F.2d 624 (5th Cir.1966); Diliberto v. Continental Oil Company, 215 F.Supp. 863 (E.D.La. 1963)[5]; ABA Antitrust Section, State Antitrust Practice and Statutes: Chapter 20 for the State of Louisiana, 20-21 (1990).
The one year prescriptive period begins to run from the date actual or appreciable *1027 damage is sustained. La. C.C. art. 3492. The damage need not be calculable or fully incurred but cannot be speculative. Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992). The commencement of prescription is delayed when a complex business tort, similar to a continuing tort, is involved. Prescription does not begin to run until the continuing tort ceases. National Council on Compensation Insurance v. Quixx Temporary Services, Inc., 95-0725 (La.App. 4 Cir. 11/1/95), 665 So.2d 120. There must be continuing acts coupled with continued damages. Id.; South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d 531 (La.1982).
Prescriptive statutes are strictly construed against prescription and in favor of the claim. Bustamento v. Tucker, 607 So.2d 532 (La.1992). If there are two possible constructions of a prescriptive statute, the one that maintains the action should be adopted. Louisiana Health Services and Indemnity Company v. Tarver, 93-2449 (La.4/11/94), 635 So.2d 1090.
The burden of proving that a suit has prescribed rests with the party pleading prescription. Boyd v. B.B.C. Brown Boveri, Inc., 26,889 (La.App. 2 Cir. 5/10/95), 656 So.2d 683, writ not considered 95-2387 (La.12/8/95), 664 So.2d 417. When a petition reveals on its face that prescription has run, the plaintiff has the burden of showing that the claim has not prescribed. Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206; Lima v. Schmidt, 595 So.2d 624 (La.1992).
La. R.S. 51:122 et seq. is a counterpart to § 1 of the Sherman Antitrust Act. The U.S. Supreme Court's interpretation of the Sherman Act is a persuasive influence on the interpretation of our state statutes. Louisiana Power and Light Company v. United Gas Pipe Line Company, 493 So.2d 1149 (La.1986), rehearing granted on other grounds. Generally, an antitrust cause of action accrues when a defendant commits an act which injures a plaintiff's business. However, in the context of a continuing conspiracy to violate antitrust laws, each time a plaintiff is injured by the act of a defendant, a cause of action accrues to recover damages caused by that act and the statute of limitations runs from the commission of the last act. Al George, Inc. v. Envirotech Corporation, 939 F.2d 1271 (5th Cir.1991), quoting Zenith Radio Corporation v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). See also Imperial Point Colonnades Condominium, Inc. v. Mangurian, 549 F.2d 1029 (5th Cir.1977), cert. denied 434 U.S. 859, 98 S.Ct. 185, 54 L.Ed.2d 132 (1977); Bell v. Dow Chemical Company, 847 F.2d 1179 (5th Cir.1988); Poster Exchange, Inc. v. National Screen Service Corporation, 517 F.2d 117 (5th Cir.1975). Federal cases interpreting the statute of limitations involved in antitrust actions (four years under 15 U.S.C. § 15b) hold that in a conspiracy action the period begins with an overt act pursuant to the conspiracy; cases look to the last bid in which wrongdoing is alleged in bid rigging cases. See State of Texas v. Allan Construction Company, 851 F.2d 1526 (5th Cir.1988).
In an antitrust action the plaintiff must know or should have known that he is sustaining an actionable injury before the prescriptive period begins to run. When an act does not effect a traumatic injury but produces ill effects by passage of time, and it is impossible to designate the exact moment when the act produced the requisite damage to start prescription, recovery should be allowed for all damages sustained within one year prior to the filing of the suit. Delaughter, 364 F.2d at 624.[6]
However, there are two grounds for allowing an antitrust suit to be filed more than four years after the events that create the *1028 cause of action: the continuing conspiracy or continuing violation exception that allows a cause of action to accrue whenever the defendant commits an overt act to further the antitrust conspiracy; and the revival of the cause of action outside the limitations period because the plaintiff's damages were speculative or unprovable when the act originally occurred. Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045 (5th Cir.1982). See also Zenith Radio Corporation, 401 U.S. at 321, 91 S.Ct. at 795.
In order to avoid the federal statute of limitations a plaintiff may also invoke the fraudulent concealment doctrine, which is similar to Louisiana's doctrine of contra non valentem. Fraudulent concealment involves proof that the defendant concealed the injurious conduct and that the plaintiffs did not discover the conduct despite due diligence. Some federal circuits have held that antitrust violations arising from bid-rigging conspiracy are self-concealing and affirmative acts of concealment need not be shown. New York v. Hendrickson Brothers, Inc., 840 F.2d 1065 (2d Cir.1988), cert. denied 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988); State of Colorado ex rel. Colorado Attorney General v. Western Paving Construction Co., 833 F.2d 867 (10th Cir.1987), panel opinion vacated en banc 841 F.2d 1025 (1988). See also Hobson v. Wilson, 737 F.2d 1 (D.C.Cir.1984), cert. denied 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). The Fifth Circuit rejects that argument, but holds that actions to show fraudulent concealment need not be separate from the acts underlying the bid-rigging. State of Texas, 851 F.2d at 1531.

DISCUSSION
Borden argues that prescription runs where the State asserts claims in its parens patriae capacity and here the one year prescriptive period has run. The Attorney General counters that prescription does not run against the State based on La. Const. art. XII, § 13, which declares that "prescription shall not run against the state in any civil matter unless otherwise provided in the constitution or expressly by law." A parens patriae action brought by the State on behalf of its citizens has elements of private and public enforcement. The passage of the four year period under federal law is used to bar actions by the states. See State of Texas, 851 F.2d at 1526. The Attorney General quotes the constitutional article which grants the State immunity, but provides no support for that proposition in this case where the State filed suit on behalf of citizens and school systems against whom prescription runs. See State of Louisiana Through Department of Highways v. City of Pineville, 403 So.2d 49 (La.1981). The passage of the prescriptive period has barred antitrust actions by states. See State of Texas, 851 F.2d at 1526.
The Attorney General also argues that La. R.S. 51:121 et. seq. does not set out a prescriptive period for antitrust actions, and a ten year period is appropriate because Borden was unjustly enriched. Borden correctly notes that the petition below did not raise an unjust enrichment claim. The Petition For Treble Damages Pursuant To The Louisiana Monopolies Law referred to La. R.S. 51:132, 51:137 and 51:138 and sought treble damages as a result of Borden's acts. The petition alleged a bid-rigging scheme that affected the ability of the schools to receive fair competitive bids and pay competitive prices on milk sold to Louisiana schools. The petition claimed that Borden and its co-conspirators had a continuing agreement to allocate among themselves all or part of contracts to supply milk to schools, to refrain from submitting bids or to submit collusive, non-competitive and rigged bids, to supply milk to Louisiana schools at non-competitive prices. The petition claimed that Borden and the other co-conspirators discussed submission of bids, designated which conspirator was to be the low bidder, discussed and agreed upon prices to be bid, and submitted intentionally high bids. There is no mention of Borden's unjust enrichment except in an opposition to Borden's prescription exception. The petition did not allege unjust enrichment or quasi-contract. The one year prescriptive period of the antitrust law, La. 51:121 et seq., applies. Loew's Incorporated, 110 So.2d at 553; Delaughter, 364 F.2d at 624; Diliberto, 215 F.Supp. at 863.
*1029 Borden contends that the petition predicates liability entirely upon the federal criminal antitrust judgment. Borden argues that the state civil claim is limited to the time frame of the federal judgment ending in June, 1989 and the October 10, 1994 petition has prescribed.
Paragraph 3 of the State's petition declares that "[d]uring the critical period, defendant engaged in the sale, processing and distribution of fluid milk...." Paragraph 10 of the petition filed October 10, 1994 states: "During the pertinent period, relative to the criminal judgment ...." without directly stating the time period. The description of the offense in the federal information filed October 12, 1993 against Borden Inc. states: "Beginning at least as early as 1985 and continuing thereafter until at least June 1989, the exact dates being unknown to the United States, the defendant and others entered into and engaged in a combination and conspiracy to suppress and eliminate competition by rigging bids...." Borden pleaded guilty pursuant to a plea bargain agreement on October 12, 1993 and judgment, which declared that the conduct concluded in June, 1989, was entered on April 18, 1994.
The civil petition does not clearly set out the time periods. The federal complaint, which arose pursuant to a federal grand jury investigation, stated that Borden's activities continued at least until June, 1989. The criminal antitrust judgment is prima facie evidence against Borden in the civil proceeding as to all matters which would be res judicata between the parties in the prosecution. Borden points out that the state court civil petition encompassed claims by 27 school systems not included in the federal complaint. Borden also declares that the civil suit "appears to go far beyond the limited scope of the earlier federal proceeding." The federal complaint involved bid-rigging in western Louisiana; the civil suit includes a number of school systems in eastern Louisiana as well. The state civil petition covered far more than the federal complaint; it included a bid-rigging scheme involving many school systems not in the federal complaint. The parens patriae suit was not limited to the allegations and time periods in the federal complaint.[7]
Regardless, the one year tort period runs from the time the plaintiff acquired sufficient knowledge of the offense to realize there was an injury. Delaughter, 364 F.2d at 624. The federal complaint was filed October, 1993 and Borden concedes that prescription as to the civil suit was suspended until the judgment of April 18, 1994. The state petition filed October 10, 1994 was not prescribed on its face. In its memorandum in support of its prescription exception, Borden argued that the civil action had prescribed one year after the June, 1989 date in the federal judgment. It did not allege or show that bid-rigging was known prior to the date the federal complaint was filed. Nothing was presented to show there was sufficient knowledge about Borden's antitrust violations more than one year prior to filing the civil petition (deleting the time suspended because of the federal prosecution) or that the last act of bid-rigging in furtherance of the antitrust conspiracy occurred more than one year prior to that date.
Borden concedes that under La. R.S. 51:132 prescription was suspended from October 12, 1993 to April 18, 1994, and bid-rigging occurring after April 14, 1993 (counting the date backward from October 12, 1994) fell within one year. Although Borden contends that such conduct was not properly alleged, we conclude the trial court did not err by overruling the prescription exception. The exception may be raised if the claims are subsequently shown to have prescribed.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] The petition is stamped October 10, 1994 and has an entry date of October 12, 1994.
[2] In two paragraphs the state alleges that the children who suffered damages are plaintiffs but they are not listed in the caption. Only the school systems are in the caption.
[3] The Attorney General and Borden make reference to an amended petition which included a number of Catholic dioceses. The record does not contain an amended petition.
[4] The Hart-Scott-Rodino Antitrust Act of 1976 provides that any Attorney General of a state has the authority to sue parens patriae for treble damages for a Sherman Act violation. 15 U.S.C. § 15c.
[5] Loew's Incorporated, Delaughter, and Diliberto use La. C.C. art. 3536, which was subsequently incorporated into La. C.C. 3492.
[6] At issue in Delaughter, 364 F.2d at 624, was Borden's alleged offering and paying of rebates and discounts, violations of the Louisiana Orderly Milk Marketing Act, which declared that each day's violation constituted a separate offense. The U.S. Fifth Circuit adopted Louisiana's one year prescriptive period because the Louisiana Supreme Court utilized the one year period in Loew's Inc., 237 La. at 132, 110 So.2d at 553, which was a private anti-monopoly action. The Fifth Circuit reversed the district court's decision that the action prescribed because prescription ran from the month that Delaughter knew of Borden's injurious activities, and the action was filed more than one year afterward, and allowed Delaughter's claims for injuries sustained within one year of the filing of suit.
[7] The petition is poorly drafted, but Borden did not complain about the drafting; it only filed a prescription exception. The petition erroneously declares that "antitrust liability is established, leaving only damages to be proven at trial."

However, the petition, which includes a number of school systems not mentioned in the federal complaint, is not limited to the ending date in the federal judgment.