hJOAN BERNARD ARMSTRONG, Chief Judge.
Relator, Exxon Mobil Corporation (XOM), successor to defendant Mobil Oil Corporation, seeks review of the trial court’s judgment of December 7, 2004 denying its Exception of Prescription and Exceptions of No Right of Action and/or Improper Use of Class Action and Alternative Motion to Deny Class Certification as a Matter of Law.
On December 5, 1990, the original plaintiffs, all residents of Orleans Parish, generally in the lower half of Algiers, filed a class action alleging injury and property damage arising from various activities, emissions and/or releases of substances from the plants in St. Bernard Parish owned by the relator and two other defendants, now dismissed from the suit. The plaintiffs alleged that the defendants “own and operate refining, chemical and/or processing plants in the Parish of St. Bernard, ... whose various activities, including but not limited to, emissions and/or releases of substances, particulate matter, noxious odors, excessive noise, light, etc., individually and concurrently cause injury and damages to plaintiffs and members of the class who reside in and have property in the Parish of Orleans.” They allege further that the defendants have generated and disposed of large quantities of hazardous, toxic, noxious or solid pollutants into the air, “which have |2been continuously *1184 emitted, discharged, released, or escaped from said plants such that they have caused damage to plaintiffs and members of the class as herein alleged, and “have continuously created, generated, or caused noxious fumes and odors, smoke, light from flare releases, noise and particulate matter and other substances to be released from their facilities, thereby causing damage and injuries to” the plaintiffs and their property. The plaintiffs allege that the quality of their daily lives has been disrupted and that they “experience mental anguish and emotional upset” at seeing their property damaged. Furthermore, the plaintiffs claimed that the defendants “create a nuisance and materially damage residents of Algiers.”
In the Fourth Supplemental and Amending Petition, filed on July 1, 1998, the plaintiffs dismissed the relator’s co-defendants and substituted for the paragraph in the original petition asserting the basis for a claim against co-defendant Cal-ciner Industries, Inc. allegations that the relator on specific occasions violated its permitted levels of emissions into the atmosphere of noxious and hazardous chemicals causing damage to the plaintiff class. The amended petition sets forth incidents, volumes of excessive release and the substance released on dates from January 1, 1990 through February 27, 1997. Each of these incidents occurred over one year before the filing of the Fourth Supplemental and Amending Petition.
The Fifth Supplemental and Amending Petition, filed on October 2, 1998 in the United States District Court for the Eastern District of Louisiana, added Chalmette Refining, L.L.C. as a defendant and added St. Bernard residents to represent members of a broadened class of persons residing in that parish. They claimed damages caused by “aerial emissions and/or release of hazardous and nonjhazardous3 substances from defendant’s facility.” According to this petition, the “emissions complained of are limited to reported and unreported “upsets” and/or exceedances over the permitted and/or regulatory levels established by the appropriate authorities for aerial emissions from the defendants’ facility.” Plaintiffs attached a list of all reported incidents and citizen complaints to and/or about the defendants from July 7, 1989 through September 20, 1997. Plaintiffs re-urged their claim that the actions of the defendants “create, cause or contribute to a nuisance” in the use of their property. All of the incidents noted in the attachment to this petition occurred more than a year before the filing of the petition.
On July 15, 2003, the plaintiffs filed a Sixth Supplemental and Amending Petition, attaching a list of reported incidents and citizen complaints from November 4, 1997 through July 12, 2003. Of the incidents noted in the attachment to this petition, only two, a release of unknown duration and quantity of products of combustion occurring on June 10, 2003 and a release of unknown duration, quantity and source of unidentified hazardous chemicals occurring on July 12, 2003, happened within one year of the filing date of the petition.
On August 13, 2003, the plaintiffs filed a Seventh Supplemental and amending Petition adding a list of reported incidents and citizen complaints between March 10, 2002 and July 12, 2003, reserving the right to supplement the petition as information relative to preceding, intervening and subsequent alleged emissions are made available. Only three of the noted incidents attached to this petition occurred more than one year before the filing of the petition.
Thus, pursuant to the one-year libera-tive prescription provided in La.C.C. art. 3492 for tort actions, those incidents that occurred more than one year before the *1185 filing of the petition claiming damage from those incidents have prescribed on |4their face. That being the case, the burden of proving an exception to that prescription rests with the respondents. The relator contends that the respondents’ claim is not one of “continuing tort”, and that while the fourth, fifth, sixth and seventh petitions supplement the original petition, they are not “amending petitions” and do not relate back to the original petition for purposes of compliance with La.C.C.P. art. 1153’s exception to the liberative prescription of one year for torts.
The relator argues that a supplemental petition covers issues or causes of action that have arisen SINCE the filing of the original petition and which relate to the issues or actions contained in the original petition; an amended petition involves matters which occurred BEFORE the original petition was filed and were either overlooked by the pleader or were unknown to him at that time. Adema v. Elliott, 223 So.2d 464, 467 (La.App. 4 Cir.1969). This distinction is significant in light of La.C.C.P. art. 1153 which provides in pertinent part:
When the action ... asserted in the amended petition ... arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
La.C.C.P. art. 1155 provides in pertinent part with respect to supplemental pleadings:
... a supplemental petition ... [sets forth] items of damage, causes of action ... which have become exigible since the date of filing the original petition ..., and which are related to or connected with the causes of action ... asserted therein.
There is no provision in the Code for relation back of a supplemental, as contrasted with an amending, petition. Thus, a party is not allowed to assert a new cause of faction that has otherwise prescribed merely by denominating his pleading an “amending petition.”
An- amended pleading either restates the allegations of a claim ;.. which were imperfectly stated, or adds a new claim ... which existed, but was not pleaded when the original pleading was filed. A supplemental pleading sets forth a new claim ... or an item of damages, which arose after the filing of the original pleading. Maraist and Lemmon, 1 Louisiana Civil Law Treatise, Civil Procedure § 6.10.
This principle was addressed by Plotkin and Akin, 2 Louisiana Practice Civil Procedure Article 1153 (2000):
■After a civil action has been properly filed involving a- particular conduct, ... or occurrence, the defense of prescript tion is meritless against later assertions by amendment of claims or defenses arising out of the same conduct, transaction, or occurrence. Amendments that conform to this standard relate back to the date the action was commenced. The reason for this policy is to mitigate the effects of prescription.
A frequent legal issue associated with La.Code Civ. Proc. Ann. Art. 1153 arises when prescription has run at the time the amendment is filed. Amendments that correct or modify the original claim or facts with greater particularity relating to the conduct, transaction, or occurrence set out in an earlier pleading relate back to the date the action was commenced.
Technically, then, those emissions that constitute new claims or items of damages arising after the filing of the original pleading do not relate back to the filing of the original petition.
The relator relies on the seminal case of Smith v. Cutter Biological, 99-2068 (La. *1186 App.9/6/2000), 770 So.2d 392. In that ease, plaintiff timely filed a claim against Cutter, a manufacturer of hemophilia clotting factor used by him. Nine months later, by “supplemental petition”, he added additional defendants and in his | fi“petition, as amended,” alleged that all the defendants acted separately and in combination to allow their medicine to become contaminated with HIV virus, causing him, as a consumer of the product, to become infected. The trial court found prescription had run against the added defendants, and this Court affirmed.
Relation back became an issue in the case when the original plaintiff, Mr. Dixon, died of AIDS. His parents were substituted as parties plaintiff and filed their own wrongful death action. Citing Giroir v. South Louisiana Medical Center, Division of Hospitals, 475 So.2d 1040 (La.1985), the parents contended that their wrongful death claims related back to the filing of the original petition. We found Giroir did not support the parents because in Giroir, the amended wrongful death and survival petition related back to an already existing wrongful death and survival petition, and merely added Mrs. Giroir’s children as parties plaintiff. Since the Dixons’ wrongful death suit asserted a cause of action that had not arisen at the time their son filed his original petition, we found their “amended petition” was really a supplemental petition, raising an after-accrued cause of action, and did not relate back to the original petition for purposes of prescription interruption.[1]
However, it is important to recognize that prescription is not an arbitrary concept, but has its roots in the public’s interest to be protected against stale claims and to be notified in a timely manner of claims so that relevant evidence may be secured and protected. As we noted in Smith:
When the defendant knows or should know before the expiration of the prescriptive period that legal demands are made upon him from the occurrence ^described in the petition filed, prescription is interrupted. Smith, supra at p. 34, 770 So.2d 392, 411, quoting from Nini v. Sanford Brothers, Inc., 276 So.2d 262, 264 (La.1973).
The Louisiana Supreme Court held that it is well established, that La.C.C.P. art. 1153 permits amendment despite technical prescriptive bars where the original pleading gives fair notice of the general fact situation out of which the amended claim arises. Where there is some, factual con-nexity between the original and amended assertions, together with some identity of interest between the original and the supplemental party, amendment should be allowed. Gunter v. Plauche, 439 So.2d 437, 440 (La.1983), quoting from Baker v. Payne and Keller of Louisiana, Inc., 390 So.2d 1272, 1275 (La.1980).
Here, as in the Gunter case, the actors are the same in the petitions — the plant operators and the class of persons allegedly damaged by emissions of various kinds from those plants.[2] There is a factual connexity between the claims made in the various petitions.' In Gunter, a medical malpractice case, the Supreme Court found sufficient factual similarity in the fact that while the petitions' raised viola *1187 tions of two statutory duties (surgical malpractice and lack of informed consent), there was a factual connexity between them. The consultation and recommendation of surgery occurred only nine days before the first operation, and the defendant’s conduct was one transaction of medical service for the purposes of prescription and relation back.
Louisiana’s Code of Civil Procedure abolished the “theory of the case” restriction on pleadings. Article 1153 requires only that the amending petition’s thrust factually relate to the conduct, transaction or occurrence originally alleged. ... The essence of interruption of | ^prescription by suit is notice.... The transaction or occurrence giving rise to the demand or object of the suit remained unchanged by the amendment and, even if the state of facts which constitute the defendant’s wrong differ enough so that two' causes of action exist, the facts of the transaction which created both duties is similar enough to support a relation back of the amending petition under art. 1153.
The instant case is a bit different as it involves a series of allegedly excessive emissions from the relator’s plants, occurring over a period of years, most of which passed while this proceeding was pending in the trial court. Recognizing the central role of notice and opportunity to preserve evidence noted as a basis for tbe principle of prescription, and applying the Gunter analysis, we conclude that the original petition would put a reasonable defendant on notice that its allegedly excessive emissions were causing damage to neighboring-residents.
There is no language in any of these petitions that would indicate an intention to limit the scope of the gravamen to past actions and to past damages. The use of the present and present perfect tenses throughout the petitions, and the reference to nuisance claims that are by their nature ongoing in this context, would put a reasonable defendant on notice that, unless it were to change its operations and to discontinue its activities, its ongoing consistent actions would form the basis for additional damage claims by the class. In that connection, a reasonable defendant would be on notice that it should preserve and collect evidence relating to its continued operations, providing that those operations were consistent with the operations of which the plaintiffs complained in their various petitions. The relator has not demonstrated that the actions complained of in the various supplemental and amending petitions are inconsistent with the more generalized actions complained of in the original petition.
lgIn contrast, the language- in the original complaint filed in Moran v. Vaccaro, 684 F.Supp. 1201 (S.D.N.Y.1988), cited by relator, alleges that the defendants “owned, operated, maintained, managed, had,custody and control of ... refineries ... which have emitted .... which have caused damaged ... [and] generated and disposed of pollutants ... which have been continuously emitted, discharged, released or escaped from said plant such that they have caused damage.” The consistent use of past tenses in the original petition indicates that the complaint is limited to past acts. There is no allegation of nuisance nor is there a clear implication, as in the instant petitions, that the emissions and alleged damages are ongoing.[3]
Therefore, on the showing made, we deny the relief the relator seeks with re *1188 spect to the trial court’s denial of the Exception of Prescription.
La.C.C.P. art. 592(A)(3) requires a hearing in the trial court on the question of class certification. There is nothing in the application for supervisory review demonstrating that such an evidentiary hearing was held, nor is there a transcript of such a hearing for our review. Therefore, there being nothing for this Court to review, we deny the application for review of the denial of the relator’s Exception of No Right of Action and/or Improper Use of Class Action and Alternative Motion to Deny Class Certification as premature on the showing made.
WRIT GRANTED IN PART AND DENIED IN PART; JUDGMENT AFFIRMED.
TOBIAS, J., concurs in the result and assigns reasons.
BELSOME, J., concurs in result.

. Cf. Esteve v. Iberia Parish Hosp., 520 So.2d 848 (La.App. 3 Cir.1987) allowing a wrongful death claim by the decedent's husband to relate back to an original petition filed prior to the death of the decedent where the original petition was timely filed. In that case, neither party nor the court argued or recognized the distinction between supplemental and amending petitions in this context.

. While the class was expanded to include residents of Saint Bernard Parish, the additional geographical area has not been shown to have prejudiced XOM's defense.

. Furthermore, the respondent argues that poor record-keeping and incomplete disclosure of its emissions by XOM to the Louisiana Department of Environmental Quality has, over time, prevented the respondents from having timely notice of the extent and type of emissions causing their damages. These facts *1188 present a colorable claim of contra non vdlen-tem as to such unreported emissions as may be proven at trial to have come within the ambit of that principle. See, Nat. Council v. Quixx Temporary Services, 665 So.2d 120, 123 (La.App. 4 Cir.1995), citing Corsey v. State, through Dept. of Corrections, 375 So.2d 1319, 1321-22 (La.1979).